THE PEOPLE *ex rel.* FLYNN *v.* ABBOTT *et al.*

IN *quo warranto* for an alleged usurpation of the office of Pilot for the port of San Francisco, the complaint avers that defendants hold, use, exercise, usurp and enjoy the office, without a license, and also contains allegations as to the right of relator to the office: *Held,* that these allegations as to relator's right, cannot be reached by general demurrer, the complaint being good as against the defendants; that they are not interested in the question as to the right of relator, but only in the determination of their own right to the office.

The Act of April 21st, 1860, relative to Pilots in the port of San Francisco, did not legislate out of office Pilots licensed under acts repealed by the Act of April 21st, whose terms of office had not expired when this act went into operation.

The title of an act cannot be used to restrain or control any positive provision of the act, but, where the meaning of the body of the act is doubtful, the title may be resorted to as a means of ascertaining the intention of the Legislature.

APPEAL from the Twelfth District.

Flynn *v.* Abbott.

The complaint avers, in substance, the passage of the Act of April 21st, 1860, under which relator claims to hold the office of Pilot for the port of San Francisco—the repeal of the Act of May 11th, 1854, and the amendatory Act of April 16th, 1858, under which defendants claim—the appointment by the Governor of a Board of Pilot Commissioners—the organization of said Board—the examination and appointment of relator as Pilot—the holding, usurpation and enjoyment of the office by defendants—and prays that they be deprived of the office, and severally subjected to a fine.

The defendants demurred separately to the complaint, on several grounds : First, a misjoinder of parties defendant; in joining Abbott with Palmer as defendant; and *vice versa.* Second, a misjoinder of causes of action; in uniting a cause of action for usurpation of office with one for a fine or penalty. Third, a failure to state facts sufficient to constite a cause of action. Fourth, that the complaint is ambiguous and uncertain.

The defendants also answered; denying all the allegations of the complaint, and setting up in themselves a right to the office of Pilot of the Port of San Francisco, by licenses duly granted under the law of 1854, as amended in 1858, by the late Board of Pilot Commissioners, etc.

Other facts are stated in the opinion of the Court.    Plaintiffs appeal.

*Thomas H. Williams, Attorney General, and Nugent & Judah,* for Appellants.

I.   The Act of April, 1860, not only in terms, repeals all former acts upon the subject of Pilots in San Francisco, but operates as such repeal by implication, because it is clearly intended to prescribe the only rule that shall govern. *(Pierpont* v. *Crouch,* 10 Cal. 315; *Billinys* v. *Harvey,* 6 Id. 381; 21 Pick. 373; 7 Mass. 140; 12 Id. 537, 545; 4 Pick. 21, 23; 10 Id. 37, 39; 20 Id. 407, 410.)

II.   The fact that the title of the Act of 1860 purports simply to amend the previous act, does not make the act any the less a repeal of former acts. The title is no part of the act itself. (Dwarris, 501; Sedgwick on Stat. and Const. Law, 50; Smith on Const. and Stat. Const. 698; *United States* v. *Fisher,* 2 Cranch, 386.)

III.   The repealing clause controls all previous parts of the act. If the latter part of a statute be repugnant to the former part, it shall stand, and, so far as repugnant, be a repeal of the former part, because

Flynn *v.* Abbott.

it was last agreed to. (*Harrington* v. *Trustees of Rochester*, 10 Wend. 547 ; 7 Harris' Pa. 211 ; Dwarris, 513, 515 ; Fitzgibbon, 195 ; 2 Barn. & Adol. 818.)

IV.    The Act of 1860, having repealed all former acts concerning Pilots, etc., in San Francisco, deprived all officers holding under those acts, of their offices.    (4 Moore & Payne, 341, 351 ; Smith on Const. and Stat. Const. 889–90 ; Dwarris, 676.)

*Eugene Casserly*, for Respondents.

I.    The action is the statutory one under section three hundred and ten, etc., of the Practice Act; and is designed to obtain the full judgment under section three hundred and eleven, against the defendants, and in favor of the relator.

The provisions of our statute (sections three hundred and ten, etc.) differ materially from the English law of *quo warranto*, and informa-tion in that nature, (3 Blac. 262–4 ; Cole on *Quo Warranto*, 110, Law Lib.) and especially in this, that they allow the right of the relator as well as of the defendants, one or many, to be tried and determined in the same action.    (Secs. 311, 312, 315.)

II.    When a relator in this action chooses to proceed under section three hundred and eleven, in order to establish his own right, he is bound to show affirmatively a good title in himself to the office in dispute.    (Prac. Act, sec. 311 ; *People* v. *Ryder*, 2 Ker. 433.)    In such a case, the doctrine of the law in favor of third persons and the public as to acts of persons done *colore officii*, does not apply.    The relator must show himself an officer *de jure*, fully and strictly. (*Payne* v. *San Francisco*, 3 Cal. 122, 125 ; *Riddle* v. *Bedford*, 7 Serg. & R. 386 ; *People* v. *Hopson*, 1 Denio, 579, and cases cited.)

III.    This, the relator has not done.    His complaint does not show him to have been well appointed ; and it does show affirmatively that the Board of Commissioners by whom he was licensed, was not a law-ful body.

The rule of law as to the appointmet of Pilots is settled in this Court. (*People* v. *Woodbury*, 14 Cal.)    One relying on such an ap-pointment, must show that the Board had jurisdiction to make it.    He should show, among other things, that he was "rigidly examined by the Commissioners, before two or more licensed pilots." (Act, etc., sec. 7, Laws of 1860, 221.)    The complaint alleges merely that the relator was "duly examined, etc., in the manner and form prescribed in section seven," etc., "and before the persons therein referred to," etc.

This is not sufficient. The examination "rigidly," "before two or more licensed Pilots," is a jurisdictional fact within the rule of *People* v. *Woodbury*, and should be so alleged in so many words. (*Ladbroke* v. *Gyles*, Willes, 199; *Cleveland* v. *Rogers*, 6 Wend. 438; *Mills* v. *Martin*, 19 Johns. 7, 29, 37; *Cornell* v. *Barnes*, 7 Hill, 35–7, and see all the cases cited and discussed in the reporter's note, 37–39.)

IV. So the complaint fails to show that the Board of Commissioners, from which the relator claims his license, was duly appointed. On the contrary, it shows with sufficient distinctness that the Commissioners were appointed before the act took effect.

The Act of 1860, being a general law within the Act of February 7th, 1860, (Laws of 1860, 16) did not take effect until sixty days after its passage. Until it did take effect, it had no power for any purpose whatever. It was in complete abeyance. (Bac. Abr. Statute C; *Johnson* v. *Bush*, 3 Barb. Ch. 237; *Churchill* v. *Crease*, 5 Bing. 180, per Park, J.) Consequently, no valid act could be done under it.

V. The complaint does not show that the relator is excluded from the office of Pilot, or that the defendants, or either of them, have usurped it. The allegation is that the relator, upon receiving his license as a Pilot, "entered upon the duties, and now holds and enjoys said office." If he holds the office, the defendants do not, and there is no cause of action as against them. In contemplation of law, one office cannot be held by more than one person at the same time. (*Boardman* v. *Holliday*, 10 Paige, 232.)

For the same reason, the next allegation, that the defendants "hold and usurp the said office," is defective. They could not both hold "the said office," and still less, in conjunction with the relator. It is defective for the further reason, that, coming to particulars, as to the vessels piloted, or offered to be, in and out of the port of San Francisco, there is nothing to show that these vessels were within the statute; the exception not being negatived. (Act, etc. sec. 26; Laws of 1860, 223; *Baptist Church* v. *Utica Railroad Co.* 6 Barb. 313, 319, and cases cited.)

VI. The plaintiff's demurrer to the new matter, or second defense set up in the answer of the defendants, was not well taken; for the reason, that such new matter shows the defendants in office as pilots, with an unexpired term, under the Act of 1854, as amended in 1858, at the time of the Act of 1860 taking effect, and of the alleged grievances in the complaint. This point brings us to the main question involved,

24

viz: whether or not, by the Act of 1860, the entire body of the old Pilots were legislated out of office.

Respondents' general ground is, that the law of 1860, while it modifies, in many important particulars, the system of Pilot regulations for San Francisco, and to that extent, repeals, both expressly and by implication, the former acts on the subject, yet retains in office, subject to its own provisions, the Pilots whom it found in office under the old law.  First: In the construction of a statute, the intention of the Legislature must control; to be gathered from the entire language used in connection with the subject matter and purpose of the law.  (Co. Litt. 381, a: 1 Kent's Com. 461-2; *Rawson* v. *State*, 19 Conn. 299; *Fisher* v. *Blight*, 2 Cranch, 386.)  Even though such construction may be contrary to its letter.  (*Tonnels* v. *Hall*, 4 Comst. 144-5; *People* v. *Utica Insurance Co.* 15 Johns. 380, 381, per Thompson, C. J.; *Jackson* v. *Collins*, 3 Cow. 89, 95-6.)

Second: The Act of April 21st, 1860, forms a part of a system of legislation on the Pilots and Pilot regulations of the port of San Francisco.

Third: A comparison of the Act of 1860 with the Act of 1854, (Laws of 1854, 49) as amended by the Act of 1858, (Laws 1858, 174) shows what are the main changes made by the new law.  It alters the mode of appointing the Pilot Commissioners; alters the qualifications of Pilots; increases their number from twenty to thirty, and the amount of their bonds; enlarges the tenure of their office, by retaining them during their good behaviour; and reduces the rates of pilotage. (Secs. 1, 6, 7, 8, 26, 27.)  There are changes besides these, but they are in the minor details.  In all its other important features, the Act of 1860 follows that of 1854, as amended in 1858, generally adopting its very phraseology.

Fourth: Such being the main provisions and general tenor of the new act, respondents insist that its language, intention and effect, are to modify the former system of Pilot regulations of the port of San Francisco; *pro tanto*, to repeal the late acts; but to retain in office the Pilots appointed under them.

Fifth: The main object of the new act, as of all previous acts on this subject, is to regulate the appointment of Pilots.  In nearly every commercial state of the world, the Government has reserved to itself the right of restricting the business of piloting vessels into and out of port, to a class of men found, upon an examination more or less rigid,

to be qualified for an employment so responsible.   (2 Parsons' Maritime Law, 479 ; 2 McCulloch Com. Dic. 302–7 ; Homan's Encyc. of Commerce, " Pilots." )   In every such case, of course, the examination, in the precise mode pointed out by law, is an essential precedent to the exercise of the office of Pilot.   In this State such is the settled law, since *People* v. *Woodbury*, 14 Cal.   By section seven of the new act, no person can be appointed a Pilot except upon certain conditions. One of these is, that he shall first have been "rigidly examined by the Commissioners, before two or more licensed Pilots, touching his qualifications and knowledge of the management of square-rigged and other vessels," etc.

Sixth: It will hardly be contended that a candidate might be licensed without any examination ; or after an examination had by the Commissioners, without any licensed Pilot present ; or before one only ; or before persons claiming to be Pilots, but not licensed.   Plainly, then, before the new Board of Commissioners could license a single Pilot, under the Act of 1860, he must have been examined before "two or more licensed Pilots."   How and when "licensed ? "   Manifestly, and inevitably, "licensed" under the old law ; for in the nature of things, there could have been, when the Act of 1860 took effect, no other "licensed Pilots."   Not one.   And as the act has no clause saving in office these "two or more licensed Pilots," the result is, that unless all the licensed Pilots, whom the act found in office, are retained in office, none are.   If none are, the new Board cannot legally license a single Pilot ; and it will thus be and remain a legal body, without the legal power to perform the chief object for which it was created.   The *reductio ad absurdum* is complete.

Seventh: We come next to section twenty-four of the act, which seems to be conclusive, and is as follows :

"Sec. 24. Pilots heretofore appointed, or who may hereafter be appointed, shall conform to, and be governed by, the provisions of this act, and such quarantine laws as may hereafter be enacted."

The express words of this section are irreconcilable with the theory that, by the new act, the old Pilots are removed from office.   " Pilots heretofore appointed," are and can be only those appointed under the former law.   ( *Churchill* v. *Crease*, 5 Bing. 177, 180.)   No others could be said to have been "heretofore appointed." ·   But if, at the moment the new act takes effect, the Pilots previously appointed are legislated out of office—and they must be then, or not all—it is absurd to say

they are to be "governed by its provisions;" for the reason, that they would have no existence as Pilots, for that or any other purpose. This point is made stronger, if possible, by the additional words, "and such quarantine laws as may hereafter be enacted;" showing the intention to retain the old Pilots in office, after the new act went into operation, and to subject them, so long as they should be in office, to any quarantine laws which might "thereafter" be enacted.

COPE, J. delivered the opinion of the Court—FIELD, C, J. concurring.

This is an action in the nature of a *quo warranto,* brought by the Attorney General, for an alleged usurpation of the office of Pilot for the port of San Francisco. The defendants demurred to the complaint, and at the same time filed an answer setting up certain new matter in defense of the action. The plaintiffs demurred to the new matter set up in the answer. The first of these demurrers was sustained, and the second overruled. The plaintiffs refused to amend, and a judgment was rendered in favor of the defendants. The errors assigned, relate to the decision of the Court upon the demurrers.

The demurrer to the complaint was improperly sustained. The objections on the ground of a misjoinder of parties, and of causes of action, are not urged, and we shall, therefore, treat them as abandoned. No relief is asked in favor of the relator, and the allegations of the complaint, setting forth his right to the office, are superfluous and immaterial. Besides, no question, as to the sufficiency of these allegations, can be raised upon a general demurrer. The complaint being good, as against the defendants, the demurrer should have been overruled. If the allegations are insufficient to authorize a determination of the rights of the relator, the proper course will be to disregard them. We do not see that the defendants are interested in the question. So far as they are concerned, the object is to determine their right to hold the office which they are charged with usurping, and the maintenance of this right is not involved in the denial of the rights asserted by the relator. At least, the contrary does not appear in the complaint, and, of course, in passing upon the demurrer, we can only consider such questions as are raised by it. As against the defendants, the complaint contains a statement of all the facts necessary to maintain the action. It avers that they hold, use, exercise and enjoy the office, without a license for that purpose. We are unable to perceive any substantial

Flynn *v.* Abbott.

objection to this averment.   No person can hold the office without a license, and an usurpation is charged in direct and unequivocal terms. It being averred that they hold and enjoy the office, and have no license authorizing them to do so, nothing further is required to put them upon their defense.   These are the facts constituting the cause of action, and the only facts necessary to be stated.

This is sufficient to reverse the judgment, but as the material question in the case arises upon the demurrer to the answer, it would be improper to send the case back without disposing of this question.   The Legislature, on the twenty-first of April, 1860, passed an act entitled "An Act amendatory of and supplemental to an Act to establish Pilots and Pilot Regulations for the port of San Francisco, passed May 11th, 1854, and of the several Acts amendatory thereof."   This act establishes a complete system of Pilot regulations for the port of San Francisco, and contains a clause repealing the acts mentioned in the title, and all other acts and parts of acts in conflict with its provisions.   The question is, whether the effect of this act was to legislate out of office Pilots licensed under previous statutes, whose terms of office had not expired when the act went into operation.   The solution of this question depends upon the construction of the act itself, and in arriving at a conclusion, we have given to the subject a patient and careful examination.   In the title, the act is declared to be amendatory of, and supplemental to, the several statutes then in existence upon the subject of Pilots and Pilot regulations for the port of San Francisco.   It is contended that the title is no part of the act, and cannot be referred to for the purpose of ascertaining the import and meaning of its terms.   But the rule seems to be, that where the meaning of the body of the act is doubtful, the title may be relied on as an assistance in arriving at a conclusion.   Of course, it cannot be used for the purpose of restraining or controlling any positive provision of the act, but in cases of doubt it is frequently resorted to as a means of ascertaining the intention of the Legislature.   Taken, says Sedgwick, in connection with other parts of the statute, it may, where the intent is not plain, assist in removing ambiguities.   It is further contended, that the title in this case is repugnant to the purview of the act, and that no effect can be given to it without overruling the plain provisions of the statute.   Undoubtedly, the act is not what it purports to be in the title, but we are of opinion, notwithstanding the repealing clause, that the title expresses, in some degree, the intention of the Legislature.   A literal interpretation of

that clause would defeat the important purpose of the act. The intention, of course, was to supersede all previous legislation upon the subject; but the object and leading provisions of the act are irreconcilable with the idea that it was intended to sweep from existence, not only the legislation itself, but everything resulting from and depending upon it. The object was to protect the commerce of San Francisco against the dangers of the harbor, and for that purpose provision was made for the organization of a Board of Pilot Commissioners, and the appointment of a sufficient number of competent Pilots. But the Legislature must have seen that if the Pilots previously appointed were removed from office, considerable time would elapse before their places could be supplied by new appointments, and that in the meantime the commerce of that port would be deprived of this important and necessary protection. It cannot be supposed that the Legislature intended to accomplish this result, and we think that no such construction is authorized by the letter or spirit of the act. One of the provisions of the act requires that applicants for appointment shall undergo a rigid examination before the licensed Pilots, and no person can be appointed except upon such examination, and upon satisfactory evidence of his qualifications for the office. (See *Palmer* v. *Woodbury*, 14 Cal. 43.) An appointment, without a previous examination, would be a nullity, and confer no right or authority upon the person so appointed; and if the effect of the act was to legislate the old Pilots out of office, no appointment can• be legally made, and the act destroys itself. Of course, a construction which defeats the purpose for which the act was passed is not admissible. In addition to this, there is a provision referring in terms to Pilots previously appointed, and requiring that such Pilots "shall conform to, and be governed by the provisions of this act, and such quarantine laws as may hereafter be enacted." This provision is susceptible of but one construction, and if we hold that these Pilots are not retained in office, we deprive it of all sense and meaning.

We think that the proper construction of this act does not give to it the effect of removing from office Pilots licensed under the acts repealed by it, and that no such removal was contemplated by the Legislature. We might give many additional reasons for our opinion, but those already given we deem to be sufficient.

Judgment reversed and cause remanded.