THE STATE OF FLORIDA, APPELLANT, VS. THE TOWN OF WINTER PARK, ET AL., APPELLEES.

1. The notice " for a period of not less than thirty days " required by the general statute for the incorporation of cities and towns, is complied with if there be thirty days given by excluding the first and including the last. Fractions of days are not considered ordinarily, and the words quoted are held not to mean thirty clear days.

2. Where such notice has been given the proceedings for imcorporation may be had on the last day of the notice.

3. There cannot be two municipal corporations at the same time over the same territory ; but this means two legal and effective corporations- and does not apply where there is a de facto corporation wi hout right, and a corporation legally organized, but not in actual government till the former is ousted. The functions ot the legal corporation are in abeyance until the ouster, and then come into full activity.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion of the court.

*C. M. Cooper, Attorney-General, Hammond & Jackson,* for Appellant.

The State of Florida on the 11th of April, A. D. 1887, filed information in the nature of a quo warranto against the municipal corporation of the town of Winter Park, in the county of Orange, and State of Florida ; and on June

the 11th, 1888, the court entered up final judgment of ouster thereon against the respondent.

On the 12th day of September, A. D. 1887, between the hours of ten and eleven P. M., notices were posted calling upon the registered bounds described therein to meet on the 12th day of October, 1887, at two P. M., for the purpose of organizing a municipal corporation, and on the 12th day of October, 1887, at said hour of two o'clock certain citizens met at the place designated and organized a second municipal corporation known as the town of Winter Park, the metes and bounds of which were within the metes and bounds of the first municipal corporation of the town of Winter Park, organized on March 10th, 1887.

At the time of this second organization the State's proceedings and quo warranto were pending against the first incorporation of March 10th, and upon these proceedings judgment was not entered until June 11th, 1888.

On November 25th, 1887, the State filed an information in the nature of a quo warranto against the second corporation of the town of Winter Park, and on February 9th, 1888, the respondents filed their answer to said writ, setting up their titles and exhibiting a certified copy of their incorporation proceedings had on October 12th, 1887, and on March 15th, 1888, the State filed its replication, setting up the first incorporation of the town of Winter Park, to wit: Of March, 1887, against which no judgment of ouster had ever been given; to this the respondents filed their rejoinder, and the State filing its joinder therein the cause proceeded to argument before Lewis C. Massey, as referee, on June 12th, 1888, whereupon the referee gave judgment in favor of the town of Winter Park, and that the defendants, Robert White, Jr., and others, as Mayor, &c., be allowed their offices, &c.

First. Appellant insists that the statutory notice of inten-

tion to incorporate was not given. The statute requires publication "for a period of not less than thirty days," calling upon the registered voters "to meet at a certain time and place to select officers, &c."

This was not done. Twenty-nine days and fourteen hours is not a publication of "not less than thirty days."

It is not as if the statute read, "publication for thirty days," in which case the law might count the first fraction of a day a whole one. McClellan's Digest, p. 245, sec. 2; Blackwell on Tax Titles, pp. 236 and 237, citing 5th Ala., 433; 2d Wall., U. S., page 177; 18th Fla., p. 973; 46 Am. Repts., p. 412, reterring to English cases; Rule 63, Circuit Court Rules of Florida.

Then the publication must call upon the registered voters to meet at a certain time and place. Appellant insists that the notice cannot fix one of the days during which it is appointed to run as the certain time on which voters are to meet. If it could fix the last day of publication it might with equal propriety fix the first.

Second. Two municipal corporations cannot exist at the same time occupying the same territory. Dillon on Mun. Cor., sec. 184, and C. C.

Third. Municipal corporations cannot be dissolved by abandoning or neglecting their charter and only by the power that created them. Dillon Mun. Cor., secs. 166 and 167.

Fourth. A municipal corporation organized under forms of law cannot be dissolved until judgment of ouster is given and the writ of ouster issued thereon against it and its officers. High on Ex. Legal Rem., sec. 755, N. 2, citing 2 Kyd, pp. 409 and 410.

The first municipal corporation of March, 1887, of the town of Winter Park, did not therefore cease its corporate

existence until June, 1888, the date of the judgment of ouster.

Fifth. The whole world is bound to recognize the existence of a municipal corporation, organized under forms of law as a municipal corporation, whether its existence be *de facto* or *de jure*, until it is dissolved by a court of competent jurisdiction. Taylor's Cor., sec. 445; Am. and Eng. Enc. of Law, vol. 4, p. 198; Frost vs. Frostburg Coal Co., 24 Howard, 278-284; Ang. & Ames on Cor., sec. 774, and cases cited; 1st Md., page 553; 10 Gill & J., 346; 9 Gill, 404; 4 G. & J., I.; 5th Mass., 230; Ang. & Ames Cor., 746.

Sixth. The judgment of a court dissolving a municipal corporation organized under forms of law does not relate back to the incipiency of the corporation, but takes effect only from the date of its rendition. High on Ex. Legal Rem., sec. 756 C. C.; Rales Co. vs. Douglas, 105 U. S., p. 728; Hussey vs. Smith, 99 U. S., p. 20.

Seventh. The State is as much bound to recognize the existence of a corporation as of an individual, and her obligation to recognize it as such only ceases when the judgment of the court dissolves it. A municipal corporation which is such *de facto* against individuals is such also against the State. There is no reason why the State cannot allege the former existence of a corporation which has been dissolved at her suit as well as anybody else. Am. and Eng. Enc. of Law, vol. 4, p. 198; 24 Howard U. S., pp. 273 and 274; Ang. & Ames on Cor., sec. 774 and cases.

Eighth. Appellant therefore insists that inasmuch as the first municipal corporation of the town of Winter Park, to-wit: the incorporation of March, 1887, was under form of law, that it was although defectively organized a *de facto* municipal corporation, and that its *de facto* and incorporate existence continued until June the 11th, 1888, when judgment was given against it. That being such municipal cor-

poration its existence was a bar to the second organization of the municipal corporation of the town of Winter Park, to-wit: the corporation formed on October 12th, 1887 ; and that although now the first corporation is dead, this court cannot hold a second to have life, its birth having been premature. Dillon on Mun. Cor., 184 and C. C.

*Foster & Gunby* for Appellees.

Maxwell, J.: The information for quo warranto in this case was filed November 25th, 1887, the substance of which is, that the town of Winter Park assumes to be a municipal corporation, with authority to elect municipal officers, and has elected such officers, though without warrant or charter for that purpose ; and that therein the said town and officers have usurped liberties, privileges and franchises to which they are not entitled, to the damage and prejudice of the people, and against the peace and dignity of the State.

For answer the officers elect say that they are the legal officers of the town, having been duly elected by the qualified electors thereof, October 12th, 1887, the said town being a corporation legally formed under the laws of the State, " more than two thirds of the qualified electors of the district proposed to be incorporated being there present, and notice as required by law having previously been given of the time and place of selecting such officers of such town, and the limits of such proposed corporation having been set out in such notice, as is required by law." With their answer, and as a part of it, they file a certified copy of the proceedings of the meeting at which they were elected, claiming that by virtue of the notice and those proceedings it is shown that they have not usurped their offices, but hold the same lawfully. The notice in its substance (the sufficiency of its time to be hereafter considered) and

the proceedings are in conformity with the general statute regarding the incorporation of cities and towns, which is as follows: "Whenever any community of persons shall de. sire to form a municipal corporation under the provisions of this act, they shall, for a period of not less than thirty days, cause to be published in some newspaper of the county, or by posting in three places of public resort in the immediate vicinage, a notice requiring all persons who are registered voters, residing within the proposed corporate limits, which shall be stated in this notice, to assemble at a certain time and place to select officers and organize a municipal government."

To the answer there were two replications: 1st, that the defendants are not legal officers of the town, duly elected thereto, as alleged, and that notice was not given as required by law, but the notice set forth was posted only on the night of September 12th, at between ten and eleven o'clock P. M., said notice calling upon the registered voters to meet at 2 o'clock P. M., October 12th following, wherefore it was not such as required by the statute, and the incorporation thereunder was illegal and void; 2nd, that said incorporation was illegal and void, because the territory embraced therein had been previously incorporated on the 8th of March, 1887, as the Town of Winter Park, and officers elected and installed for one year from that date. A demurrer to these replications was overruled, and afterwards the defendants rejoined, 1st, that the facts therein alleged are not true; 2nd, that the former corporation pleaded by plaintiff never had any legal existence; that on the 11th of April, 1887, the Attorney-General applied to the Circuit Court for quo warranto against said corporation, and that July 20th, 1887, the referee appointed to hear the case gave judgment on demurrer against the corporation, and on the same day gave judgment on the issues in favor of the State,

which said judgment is duly of record ; and that plaintiff is estopped by said adjudication from pleading said former incorporation ; 3rd, that the notice for the proposed incorporation was given thirty days prior to the incorporation, October 12th, 1837. Issues were thereupon joined, and in this state of the pleadings, a referee having been appointed to hear and determine the case, it was decided in favor of the defendants and judgment given accordingly.

On the hearing it was agreed by counsel that the answer of the other defendants should be treated as also the answer of the Town of Winter Park, and further, that the following facts should be taken as true, and that the referee should base his judgment upon the law applicable thereto :

"1st, That the notice of the proposed incorporation of the Town of Winter Park was posted on the night of September 12th, 1887, between the hours of ten and eleven o'clock, and notice calling upon the registered voters to meet at 2 o'clock, on October 12th, 1887.

"2nd, That in the former quo warranto proceedings against the first alleged incorporation of the Town of Winter Park set up in the pleadings, the decision of the referee sustaining the State's demurrer to the defendants' answer was rendered on July 20th, 1887, but that the final judgment of ouster thereon was not entered until June 11th, 1888."

The referee held that the notice was for the thirty days required by the statute, though only twenty-nine days and fourteen hours intervened between the posting and the hour for the meeting ; that the second incorporation before the first had been dissolved by the judgment of the court, could be effected within the territorial limits of the first ; that the judgment dissolving the first corporation related back to the time of the usurpation ; that the State would not be permitted to allege the existence at any time of a corporation

which, at her own instance, had been declared no body politic ; and that a public corporation might be such *de facto* as against individuals, who could not plead *nultiel corporation*, but the rule cannot apply to the State, when she has obtained judgment of ouster against such corporation. These holdings are assigned for error, and the substantial questions thus presented are : whether the notice given was in compliance with the statute, and whether it was competent to establish a new corporation before the old one was dissolved at the suit of the State?

As to the first, the ordinary rule in computing time within which notices must run, is to exclude the day on which the notice is given, and include the day on which it expires. This is the rule adopted by the Supreme Court for the Circuit Courts when any particular number of days is prescribed by the practice of these courts, except in case of *clear days*, and is the rule this court has acted on in reference to a statute of limitations for a criminal offence, saying " the rule seems to be that the first day, or that upon which the offence was committed or the thing done, is to be excluded, and the last day, or the day from which the statute commences to run, is included in the time within which the indictment may be found and the offence prosecuted. This is certainly the rule in all civil cases. * * Fractions of days are not regarded in law except where justice requires a careful examination as to the precise time of the day at which an act was performed." Savage vs. State, 18 Fla., 970. Some courts, however, reverse the rule by including the first day and excluding the last ; but as this brings the same result the difference is not material. It is only necessary to consider whether the rule, as followed in this State, applies to the present case, where the notice required was "for a period not less than thirty days." Does this mean thirty *clear days ?* If it does, both the day of the posting and the

day for the meeting should be excluded, and the notice was insufficient by ten hours. We are unable to comprehend the nicety of distinction by which "thirty days," as here used, means more than it does as used ordinarily. If it had been thirty *whole* days, or thirty *full* days, or thirty *clear* days, or any other like expression, the intention to exclude from the computation both the first and last days would be evident and plain. But a "period not less than thirty days" furnishes no criterion by which it can be said that in reckoning the number of days the usual mode should not be adopted. It has been held otherwise in England and in a few of the States, where "at least" was annexed to the number of days as "at least thirty days," which has the same import as the words of our statute; but the weight of authority in this country seems to be against that construction, and, we think, with sounder reason. It is not necessary to review the authorities. We agree with the decision in Stebbins vs. Anthony, 5 Col., 348, (46 Am. Dec., 410,) and refer to that and the note of the latter for full discussion of the subject. See also Hagerman vs. O. B. & S. Association, 25 O. St., 186; Northress vs. Cooper, 23 Kansas, 432; Welsh vs. Boyle, 30 Md., 262; Varid vs. Edmonson, 5 Gilm., (10 Ill.,) 270; Sheats vs. Selden, 2 Wall., 177.

Appellant insists that "the notice cannot fix one of the days during which it is appointed to run as the certain time on which voters are to meet." If the rule as we have adopted it is to prevail, this position is untenable. The thirty days' notice having been given, by excluding the first day and including the last, there is no reason why the meeting should not have been held as it was. The analogy to service of summons in an action at law is conclusive on this point. The service must be ten days before the rule day, or term formerly, to which return should be made, and it has always been considered that on the rule day, or beginning of the

term, the case was ready for procedure, if the service covered ten days, excluding the day of service and including the rule day, or the day of the beginning of the term.

As to the other question, whether it was competent to establish the new corporation before the old one was dissolved, the new one having been organized before the judgment of ouster against the old one in June, 1888, it is to be observed that in fact the old one was practically dissolved when the demurrer to its answer setting forth its reason for existence was sustained, and that was before any step was taken towards the new incorporation. The final judgment on the demurrer was not entered till nearly a year after the demurrer was sustained, but the right to it was apparently acquiesced in, and in the mean time the new corporation had been formed. This virtually brings the case within the doctrine of the King vs. Pasmore, 3 Term R., 199, where the grant of a new charter was sustained, on the ground that the old corporation was in effect dissolved, though it had not been formally dissolved. But independent of this, we think the law cited for appellant (1 Dillon on Municipal Corporations, 3d Edition, section 184, and note referring to the King vs. Pasmore, *supra;* Patterson vs. Society, &c., 4 Zabr., 24 ; Taylor vs. Fort Wayne, 47 Ind., 281,) does not apply in this case ; for while it is true that the old corporation was one *de facto*, and that there cannot be two municipal corporations at the same time over the same territory, this must be understood as meaning two legal and effective corporations. The object of such a corporation is the good government of the locality, and obviously that cannot be attained where two separate corporations are exercising the same jurisdiction, powers and privileges. On the contrary, it would lead to public confusion and disorder. But is there any reason to say that because there may be a *de facto* corporation in actual government, there may not also at the

same time be a legal corporation entitled to govern. There may be a *de facto* officer, and at the same time another entitled to the office; and just as the latter as relator can have the State by quo warranto oust the former, and put such relator in as the rightful officer, so why may not a corporation, legally organized, replace in the same way one that is only *de facto*, having no legal existence? If it can do this, as we think it could, clearly that is not a case in which it is proper to apply the rule that two corporations cannot exist in the same place at the same time. It makes no difference that in this case the proceeding to oust the old corporation was not by or in behalf of the new one. There was an ouster, and though this was after the new incorporation, that could not affect the legality of its organization any more than the legality of the appointment of an officer to an office occupied *de facto* without right would be affected by such occupancy. It may be said in the case of the corporation, as in the case of the office, that the rights and franchises are in abeyance, to be fully vested for exercise when the *de facto* obstruction is removed.

It is needless to consider other points argued by counsel, as in these views the case must be given to appellees, and accordingly the judgment will be affirmed.