THE TOWN OF ENTERPRISE, T. B. BIDDULPH ET AL., PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, EX REL. ATTORNEY-GENERAL, DEFENDANT IN ERROR.

1. Jurisdiction of informations in the nature of *quo warranto* is conferred on circuit courts by Section 11, Art. V., constitution of 1885.

2. Where usurpation of a public office, or a franchise, is claimed by the State, and an information in the nature of a *quo warranto* is filed by the Attorney-General to test the right to hold such office, or enjoy such franchise, it is only necessary to allege, generally, that the person holding the office, or enjoying the franchise, does so without lawful authority, and in such a case, as against the State, it devolves upon such person to show a complete legal right to enjoy the privileges in question; but if the information states the facts upon which the charge of usurpation is based, and those facts show a clear legal right in respondent, it will be insufficient.

Town of Enterprise, et al. v. State, ex rel.—Syllabus.

3. The qualified inhabitants of a hamlet, village or town in this State can not under the general acts for the incorporation of cities and towns organize and maintain two municipal governments in the same space at the same time.

4. Under such incorporating acts it is essential that a municipal corporation have ascertained and well defined boundaries, and where the metes and bounds of such a corporation utterly fail to enclose any area, and are so uncertain as to make it impossible to determine the territory of such corporation, an organization and municipal government thereunder will be a nullity.

5. The inhabitants of a hamlet, village or town, recognized as a community of persons authorized to form a municipal government under the general act for the incorporation of cities and towns, in force in this state, include persons living on contiguous territory, and where an attempt is made to incorporate two distinct detached tracts of land as corporate territory under one government, it is unauthorized and void.

6. The rule is well settled that no collateral attack can be made upon the existence of a corporation; such bodies derive their being from the sovereign will of the people, and so long as the State does not question their existence, it can not be controverted in a collateral way on account of irregularities and defects in their organization.

7. In March, 1884, an attempt was made to incorporate the town of Enterprise, and a transcript of the proceedings was prepared and delivered to the clerk of the circuit court for record. The territory of the proposed incorporation, as appears by the record, consists of two detached and disconnected tracts of land distant from each other five miles. In 1885 the Legislature provided, in chapter 3634, "that all the acts done and performed in the organization and incorporation of the town of Enterprise, in the county of Volusia, are declared to be legal and valid in law and equity, and to be considered valid and binding by the laws of the State of Florida." *Held*, that said

attempted organization was not in compliance with the general law in reference to the formation of municipal governments, and said special act, in so far as it seeks to validate the organization of said town, is in conflict with the constitutional requirement, in the Constitution of 1868, of uniformity in the organization of municipal corporations.

8. In proceedings in the nature of *quo warranto* instituted on behalf of the State to test the right to hold an office, or enjoy a franchise, great particularity is required in the answer or plea, and a complete right must be shown on the part of the respondent; but on demurrer, a bad plea is a good answer to a defective information.

Writ of Error to the Circuit Court for Volusia county.

### STATEMENT.

This is a proceeding by information in the nature of a *quo warranto* instituted in behalf of the State of Florida by the Attorney-General, in the Seventh Judicial Circuit, for Volusia county. The information states that T. B. Biddulph, S. S. Bennett, S. A. Donald, Andrew Harold, William James and George H. Count—the said Biddulph as mayor, and the said Bennett, Donald, Harold, James and Count as aldermen, and others, have usurped, and still do usurp, to be a corporation under the corporate name of the town of Enterprise, in the county of Volusia and State of Florida, as follows : That on the first day of February, A. D. 1877, the town of Enterprise, with certain metes and bounds, (which are set out in the information,) was incorporated under the name of the town of Enter-

prise, as will appear by a certified copy of the record of the transcript of the proceedings of said incorporation filed with the clerk of the circuit court of Volusia county, and by him duly entered upon the public records of said county, and which copy of the record is attached as exhibit "A" to the information.

Further, that on the 24th day of March, A. D. 1884, there having been no surrender of the aforesaid corporate franchise, and no dissolution of said corporation, the town of Enterprise was again incorporated with the following metes and bounds, to-wit : Sections one and two in township nineteen, and sections thirty-five and thirty-six in township eighteen, all in range thirty, south and east, section six in township eighteen in range thirty-one, south and east, Volusia county, Florida ; that a fair and complete transcript of the proceedings was prepared by the clerk of said town, embodying the notice by which the meeting was convened to form said corporation, the number of qualified electors present, the seal, territorial limits of said incorporation, and the names of the officers-elect, to which the mayor and aldermen attached their signatures, attested by the clerk with said seal, and was filed with the clerk of the circuit court for said county, and by him marked filed, but before being recorded was lost, destroyed or abstracted from said office by some one unknown to relator, and cannot now be found. That under each of said incorporations elections were held and officers elected, duly sworn and

qualified, and entered upon and discharged the duties of their respective offices ; that the said two incorporations, in succession, owing to factional disturbances and petty grievances were, without any warrant of authority or process of law, ignored, and on the 14th day of May, A. D. 1885, a third incorporation of the town of Enterprise was formed and organized, or attempted to be, the last and third one further contracting and changing the corporate limits, and leaving without the boundaries of said incorporation citizens and qualified voters who, under the preceding incorporations, lived within the limits of said town. That notwithstanding such change and contraction of the limits as aforesaid, no action was taken to that end as provided by law, but the proceeding had and taken in the premises were as though a new or original incorporation was being formed, as will appear by a certified copy of the transcript of the proceedings thereof attached as exhibit "B" to the information. The description of the territory of the third incorporation as embodied in the notice for the meeting to incorporate is as follows : Commencing on Lake Monroe at west line of lot three, section one, township nineteen, of range thirty, east, and running north on said line to township line dividing townships eighteen and nineteen, thence east on said line to the center of half mile post in section five, township nineteen, south of range thirty-one, east, thence south to Lake Monroe, and thence westerly on the margin of Lake Monroe to the place of beginning.

That under the last and third incorporation, or pretended incorporation, the said T. B. Biddulph on the —— day of May, A. D. 1887, was elected, or pretended to be elected, mayor of said incorporation, or pretended incorporation, of the town of Enterprise, and is now acting as such mayor, and S. S. Bennett, S. A. Donald, Andrew Harold, William James and George H. Count, on the —— day of May, A. D. 1887, were elected, or pretended to be elected, aldermen of said town, and are now acting as such aldermen, and they, said Biddulph, Bennett, Donald, Harold, James and Count, acting as such mayor and aldermen, respectively, and others residing in said town, do and perform and exercise all the liberties and privileges and franchises of incorporated towns usurping to be an incorporation, to the great damage, prejudice and wrong of the said State of Florida, wherefore due process of law is prayed against the town of Enterprise and said mayor and aldermen, and that they be required to answer by what warrant they claim to have, use and enjoy the liberties, franchises and privileges aforesaid. Process of subpœna was awarded by the court against T. B. Biddulph, as mayor of the town of Enterprise, and S. S. Bennett, S. A. Donald, Andrew Harold, William James and George H. Count, as the town council of the town of Enterprise, to answer said information.

Respondents demurred to the said information on the following grounds :

1st. "That said information does not show that either of said incorporations were legally made or formed."

2d. "That said information does show that said two incorporations were illegal and never had any legal existence."

3d. "That the existence of an illegal and void incorporation does not prevent or preclude the citizens making and forming a legal incorporation under and by virtue of the laws of the State of Florida."

4th. "That the said information does not show that the incorporation of May ——, 1885, was not legally formed in every particular, and that the general incorporation law had been complied with in all particulars and requirements."

5th. "That the said information does not show that the corporation of May ——, 1885, was not the first and only legal incorporation of the territory therein described."

6th. "That the information is in other respects insufficient, irregular and informal."

This demurrer, after argument, was overruled, and respondents excepted to the ruling of the court.

T. B. Biddulph filed a disclaimer to the effect that he had long since resigned and ceased to be mayor of said municipal corporation, or to act as such.

The respondents, Bennett, Harold, Donald, Count

and James, filed an answer, which, in substance, is as follows: They say it is true that they are the board of aldermen of the corporation of Enterprise, but it is not true as stated in the information that the name of said corporation is the town of Enterprise. They admit that they exercise the duties of aldermen, and claim that they were legally elected and qualified according to the ordinances of said corporation and the laws of Florida, and as such aldermen perform the duties thereof. They say they are informed and believe citizens, claiming to be twenty five in number, did make an attempt to incorporate certain territory described in the information, on the 21st day of February, A. D. 1877, and they are informed that the persons mentioned in the information as having been elected to office, entered upon and discharged the duties appertaining to to each office for a short time, but ceased to act as such about the middle of the year 1877, and have not acted or claimed to be such officers since that time; that corporate government within or over said territory ceased to exist, and was not exercised until the 24th day of March, A. D. 1884, when a number of persons met and attempted to incorporate the territory described in the information, and there were officers elected as alleged in said information, who entered upon the duties of their offices, but they served only a short time, and then refused and failed to act, claiming that the corporation thus formed was not legally constituted and created; that there were no officers exercising or claiming

to exercise the duties of such offices within the tertitory described in said information for about a year, and said territory remained without any corporate government for about a year. Respondents say it is true that the citizens of the territory described in the information, on the 14th day of May, A. D., 1885, did enter into and form a corporation, and proceeded thereunder to elect officers to fill the offices provided in the charter of incorporation, and respondents aver that they are their successors in office, and that officers have continually since the creation of the corporation of 1885, up to the time of filing the answer, been elected.

That it is not true as alleged in the information, that S. S. Bennett, Andrew Harold, S. A. Donald, George H. Count and William James were elected in May, 1887. It is true that S. A. Donald, George H. Count and William James were elected and qualified as alderman in May, 1887, the other two aldermen held over according to law.

Respondents deny that they or any one to their knowledge ever for any cause whatever abstracted any papers from the clerk's office of Volusia county.

It is further stated in the answer that respondents respectfully contend that the two first named pretended incorporations were never legally incorporated according to and in conformity to the statute laws of the State of Florida, but were void and without legal existence from the beginning thereof. That they con-

tend the incorporation of said territory made and formed the 14th day of May, 1885, was legally made, and that the citizens thereof are a legal government therefor; that respondents are the officers elected under said last incorporation, and they do not usurp any office, or pretend to hold under a void incorporation. Respondents ask leave to refer to the exhibits attached to the information as often as may be found necessary.

Upon the filing of this answer plaintiff moved the court for a judgment of dissolution against the corporations, or pretended, or *de facto* corporations, of the town of Enterprise, or Enterprise, and this motion was granted. A formal judgment of the court on the same day the motion was granted was entered adjudging that the corporations of the town of Enterprise formed, or attempted to be formed, on the first day of February, A. D. 1877, and the corporation of said town formed, or attempted to be formed, on the 24th day of March, A. D., 1884, and the corporation of Enterprise formed, or attempted to be formed on the 14th day of May, A. D., 1885, be each and every of them dissolved and pronounced void. Also that T. B. Biddulph, S. S. Bennett, S. A. Donald, Andrew Harold, William James and George H. Count cease to act in the capacity of mayor, and alderman, respectively of said town, and that they be ousted therefrom. Respondents bring this decision of the circuit court here for review by writ of error. They assign for error here, the granting of the writ of *quo marranto*, the

entertaining jurisdiction by the circuit court of the case made by the pleadings, the overruling of respondents' demurrer to the information, and in awarding the judgment of ouster.

The other facts in the case are stated in the opinion of the court.

*John W. Price* for Plaintiff in Error.

No appearance for Defendant in Error.

MABRY, J. :

Counsel for plaintiffs in error makes no claim in his brief that the circuit court had no jurisdiction of the *quo warranto* proceedings.

The Constitution of 1885 (Sec. 11, Article V), provides that "the circuit courts and judges shall have power to issue writs of mandamus, injunction, *quo warranto*, certiorari, prohibition, *habeas corpus*, and all writs proper and necessary to the complete exercise of their jurisdiction." Under this provision of the Constitution there is no doubt about the jurisdiction of the circuit court in proceedings by information in the nature of *quo warranto*.

Was the demurrer to the information properly overruled? The proceeding here is by information on the nature of *quo warranto*, instituted by the Attorney-General on behalf of the State, against the town of Enterprise and the plaintiffs in error. It is charged

in the information that plaintiffs in error have usurped, and do usurp, to be a corporation under the corporate name of the town of Enterprise, in Volusia county, State of Florida, and that they claim to be mayor and alderman of said town, and as such do perform and exercise all the liberties, privileges and franchises of incorporated towns, usurping to be a corporation, to the prejudice and wrong of the people of the State of Florida. The manner in which, it is claimed, they usurp the functions of municipal government is set out in the information. The information states that the town of Enterprise was incorporated on the first day of February, A. D. 1877, and without any surrender of this corporate franchise, or dissolution of the incorporation, another incorporation was formed on the 24th day of March, 1884, and that under each of these incorporations officers were elected, sworn and qualified, and entered upon and discharged the duties of their respective offices; that these incorporations in succession were ignored, and without any authority of law a third incorporation of said town was on the 14th day of May, A. D., 1885, formed or attempted to be formed, with contracted corporate limits, and leaving out citizens and qualified voters who lived within the limits of the former corporations. The three acts of incorporation, or attempted incorporation, as appears from the allegations of the information and the record of the proceedings, copies of which are attached thereto, were in the nature of original proceedings, and not a contraction, in the way provided by the statute, of the corporate

limits of a preceding incorporation. The plaintiffs in error are charged with usurpation under the third incorporation.

Where usurpation of a public office, or a franchise, is claimed by the State, and an information is filed by the Attorney-General to test the right to hold such office or enjoy such franchise, it is only necessary to allege, generally, that the person holding the office or enjoying the franchise, does so without lawful authority, and in such a case, as against the State, it devolves upon such person to show a complete legal right to enjoy the privileges in question. People *ex rel.* Palmer vs. Woodbury, 14 Cal., 43; People *ex rel.* Flynn vs. Abbott, 16 Cal., 358; State *ex rel.* Curran vs. Palmer, 24 Wis., 63; State *ex rel.* Law vs. Saxon, 25 Fla., 342, 5 South. Rep., 801. It is contended here that while usurpation of municipal functions is charged against plaintiffs in error, the information disclosed facts which show their right to exercise them, in this, that it appears from what is therein stated the two first efforts at incorporation are illegal and void, and the third one, under which they claim, is shown to be valid. We concede it to be a correct proposition, that if the information states the facts upon which the charge of usurpation is based, and those facts show a clear legal right in respondents, it would be insufficient. It was said in State *ex rel.* Law vs. Saxon, *supra*, that the same general principles and rules of pleading enforced in civil actions also govern in *quo warranto* proceedings. If the State allege a legal right in plain-

tiffs in error, and no forfeiture or loss of this right is shown, the information is insufficient. State vs. Haskell, 14 Nevada, 209. If either one of the two first incorporations were valid, and embraced territory included in the third one, under which plaintiffs in error claim, the latter is void, unless there can exist two municipal corporations at the same time over the same territory. We have no hesitancy in declaring that the inhabitants of a given territory cannot under the general incorporation law in force in this State for the organization of municipal corporations, inaugurate two municipal governments in the same space at the same time. There is no inherent power in the inhabitants of a town to create a municipal government. This can only be done in pursuance of, and in compliance with, legislative enactment on the subject. One valid organization is necessarily exclusive of another. It was said in State vs. Town of Winter Park, 25 Fla., 371, 5 South. Rep., 818, that two legal and effective municipal corporations cannot exist at the same time over the same territory, but in this case it was held that the rule did not apply where there was a *de facto* corporation without right, and a legally organized corporation not in active governmental operation till the former was ousted. *Vide* State *ex rel.* Hoya vs. Dunson, 71 Texas, 65; Buford vs. State, 72 Texas, 182; Dillon's Municipal Corporations, sec. 184, as to existence of two corporations at same time. As to the first corporation it is alleged that the town of Enterprise was incorporated on the first day of February, A. D. 1877, as will appear by a copy of the transcript

of the proceedings attached as an exhibit to the information. From this transcript of the record before us we were unable to ascertain what are the metes and bounds of the territory proposed to be incorporated. The description given utterly fails to enclose any area, and it is impossible for us to determine from it the territories or boundaries of the alleged corporation. Under our statute, and in the very nature of the existence of a municipal government, it is essential that it should have ascertained and well-defined boundaries. The organization of a municipal government under our general law for incorporating towns and cities without defined metes is unauthorized and would be a nullity. Gray vs. Sheldon, 8 Vt., 403 ; Pierce vs. Carpenter, 10 Vt., 480 ; Dillon's Mun. Corp., sec. 182. In addition to a void description of the territory proposed to be incorporated in said town, the transcript of the proceedings of incorporation recorded in the office of clerk of the circuit court did not have attached to it the signatures of the mayor and aldermen-elect and attested by the clerk with the corporate seal, as provided by the statute. Other objections are urged to the validity of this incorporation, but it is not necessary to consider them, as we think it was illegal and void on account of uncertainty in the proposed corporate limits.

A second corporation, it is alleged, was formed on March 24th, A. D. 1884. A fair and complete transcript of the proceedings was prepared by the clerk of said town, embodying the notice by which the meeting was convened to form said corporation, the number of qualified electors present, the seal, territorial limits of

said town, and the names of the officers-elect, to which the mayor and aldermen attached their signatures, attested by the clerk with said seal, was filed with the clerk of the circuit court and marked filed, but before being recorded was lost, and cannot now be found. The transcript of the proceedings alleged to have been delivered for record complies with the statute in every respect, except it does not embody the name or style of the corporation. This transcript, it seems, in some way disappeared from the clerk's office and was never recorded. We would not be disposed to pronounce the corporate organization void because of the failure to record the transcript, under the circumstances alleged. If the municipal organization was properly had, and a perfect transcript of the proceedings delivered to the proper officer whose duty it was to record it, we think the incorporators would then have complied with the requirement of the statute in so far as the creation of the corporation among themselves is concerned. They had the right to re-establish the lost transcript and have it recorded. It is not necessary for us to say here what would be the effect of a failure on their part to re-establish the lost record in a direct proceeding by the State to vacate the municipal government thus formed. There is, however, a defect in the second alleged incorporation, which demands our consideration. The alleged metes and bounds of this incorporation show that a part of the territory proposed to be incorporated is detached and disconnected from the other. Sections one (1) and two (2) of township nineteen (19), and sections thirty-five (35) and thirty-

six (36) in township eighteen (18), range thirty (30),. constitute one contiguous body, but section six (6) in. township eighteen (18), range thirty-one (31), is a body one mile square, and distant five miles. We have, then, a proposed municipal organization, under our general statute for the incorporation of towns and cities, containing as corporate territory two separate and detached localities. The query at once presents itself, can this be done? The statute provides that "the male inhabitants of any hamlet, village or town in this State not less than twenty in number," with the requisite qualifications, may establish for themselves a municipal government. It is alleged in the information that the town of Enterprise was incorporated. In Chicago & Northwestern Railway Co. vs. Town of Oconto, 50 Wis., 189, it was held that the word "town," as used in the Constitution of that State, denotes a *civil* division composed of *contiguous territory*, and under the power given to county boards by statute to set off, organize, vacate and change the boundaries of towns in their respective counties, such boards cannot make a valid order changing the boundaries of a town so that it shall consist of two separate and distinct tracts of land. In Smith vs. Sherry, *Ibid*, 210, it was said: "The idea of a city or village, implies an assemblage of inhabitants living in the vicinity of each other, and not separated by any other intervening civil division of the State." We think that the inhabitants of a hamlet, village or town recognized as a community of persons authorized to form a municipal government under the general act for the incorporation of

cities and towns in force in this State, include persons living on contiguous territory, and that an attempt to incorporate two distinct detached tracts of land, as corporate territory under one government, is unauthorized and void. 1 Dillon's Mun. Corp., sec. 27. The idea of a municipal government with outlying detached municipal provinces, was not contemplated by the statute. The machinery of government provided by the statute is inapplicable to such a state of affairs. From the allegations of the information, our conclusion is, that the second attempted incorporation of the town of Enterprise was also illegal.

The third incorporation in question, as appears from the allegations of the information and the transcript of the proceedings, a certified copy of the record of which is filed as a part of the information, was in compliance with the statute. The corporate name is Enterprise, and the metes and bounds of the incorporation are defined, and all the other requisites of the statute substantially met. It appears from the information that officers were elected, qualified and discharged official duties under the two first incorporations, but before the formation of the third, it is alleged that the two former in succession were laid aside, and proceedings were instituted to incorporate again. It is a well established rule that no collateral attack can be made upon the existence of a corporation. Such bodies derive their being from the sovereign will of the people, and so long as the State does not question their existence, it can not be controverted in a collat-

eral way on account of irregularities and defects in their organization. President and Trustees of the Town of Mendota vs. Thompson, 20 Ill., 197 ; Hamilton vs. President and Trustees of Carthage, 24 Ill., 22 ; 1 Dillon's Mun. Corp., section 43, *a*.

When the last incorporation was formed there was no municipal government in existence under either one of the former attempts at incorporation. Whatever might be the effect of an existing municipal government, under a void incorporation, as to the right of the inhabitants therein to organize anew in opposition to it, we think that after an abandonment of such organization, the former proceedings would not preclude them from proceeding to organize a municipal government in accordance with the provisions of the statute. The allegation in the information, that officers were elected and qualified under the two first incorporations, standing alone would be no objection against the third incorporation, as it is shown that the organizations under the former were void, and the governments under them abandoned before proceedings under the latter. The theory here is, that the third incorporation is illegal, and the proceedings instituted is to test the right of plaintiffs in error, and others, to maintain a corporate government. Our investigation so far has conducted us to the conclusion that, as shown by the information, the formation of the third corporation on May 14th, A. D. 1885, is legal ; and unless there is something in the acts of the Legislature in reference to the two first, that will change the result, the demurrer was improperly overruled.

The Legislature passed a special act on the 22d day of February, A. D. 1885, about one month before the third incorporation was undertaken, providing "that all the acts done and performed in the organization and incorporation of the town of Enterprise, in the county of Volusia, are declared to be legal and valid in law and equity, and to be considered valid and binding by the laws of the State of Florida." Chapter 3634, acts of 1885, laws of Florida. The first attempted incorporation, in 1877, was void for uncertainty in the territorial limits, and metes and bounds of the incorporation. The second one, in 1884, was void because an attempt was made to incorporate into one municipal government two distinct and detached tracts of land, and which was unauthorized by the general law for the incorporation of cities and towns. The enactment of this statute was before the adoption of the Constitution of 1885. The Constitution of 1868 (secs. 21, 22, Art. IV) provides that the Legislature shall establish a uniform system of county, township and municipal government, and shall provide by general law for incorporating such municipal, educational, agricultural, mechanical, mining and other useful companies or associations as may be deemed necessary. Section 17 of same article prohibits special or local laws in certain enumerated cases, which it is not necessary to mention. Under the provisions of the Constitution of 1868 the Legislature could not by special act create a municipal corporation, as the clear mandate of that instrument was, that provision should be made by general law for incorporating such bodies. The attempted incorpora-

tion of the town of Enterprise on the 24th day of March, A. D. 1884, to which the special act was no doubt designed to apply, was not in compliance with the general law on that subject, in this: That it sought to incorporate two detached territories under one government. This could not be done under the general law. Was it competent for the Legislature to validate by special act what had been attempted to be done? We are duly sensible of the rule that an act of the Legislature passed in due form is not to be held invalid by reason of its being supposed to be in contravention of the provisions of the constitution, in a merely doubtful case, and in such case the doubt should turn the scale in favor of the validity of the enactment. We recognize the well settled rule that it is only in cases where the act of the Legislature is clearly repugnant to the Constitution that it will be so declared. In Strange vs. City of Dubuque, 62 Iowa, 303; 14 Am. and Eng. R. R. Cases, 107, a special act of the Legislature, attempted to validate a void ordinance of the city of Dubuque granting a street railway company the right of way for its railroad on certain streets of the city, was pronounced void under a constitution prohibiting the legislature from passing local or special laws for the incorporation of cities and towns. It was said: "As the Legislature could not by special act, have authorized the city of Dubuque to pass the ordinance in question, it follows that it can not, after the passage of the ordinance, legalize it by special act. The Legislature cannot do indirectly what it is inhibited from doing directly." The fol-

lowing authorities sustain this position: Ex parte Pritz, 9 Iowa, 30; Davis & Bro. v. Woolnough, Ibid, 104; Town of McGregor vs. Baylies, 19 Iowa, 43; Smith vs. Sherry, *supra*. The twenty-first section of Article IV of the Constitution, which provides that "the Legislature shall establish a uniform system of municipal government," was construed in the case of McConihe v. State, *ex rel.* McMurray, 17 Fla., 238. It was said: "There is little difficulty in determining the signification of the word 'system', in this connection. Its general signification is, plan, arrangement, method, and when used in reference to municipal government, it means simply; rules and regulations for the organization and government of municpal corporations." This being the case, it becomes perfectly clear that the special act in question is in conflict with the constitutional requirement of uniformity in the organization of municipal governments, whatever might be its effect in curing mere defects in the procedure in the organization of a municipal government invested with no new or different powers than those organized under the general law. "Uniformity indicates consistency, resemblance, sameness, a conformity to one pattern." For a full discussion of the special laws prohibited, and the uniformity of the operation of the general legislation under the sections of the Constitution in question, see, in addition to McConihe vs. State, *ex rel.* McMurray, *supra*, State, *ex rel.* Haley vs. Stark, 18 Fla., 255; Lake vs. State, *ex rel.* Palmer, Ibid, 501; Ex Parte Wells, 21 Fla., 280. If municipal corporations can be formed in violation of

the general incorporation act on this subject, and then legalized by special act of the Legislature, the uniformity of municipal organization demanded by the Constitution can be dispensed with by special legislation. No such result as this, we think, can be reconciled with the Constitution. We conclude that the special act of 1885 can not have the effect to make valid what has been done in the attempted organizations of the town of Enterprise. The act can not validate what was done under either of the first two efforts at incorporation.

In 1887 we find a general act (Chapter 3748, Laws of Florida) providing for the legalization of the charters of incorporated cities and towns. This act went into effect after the third incorporation was had. A perusal of this act will show that it has no application to the two first attempted incorporations. There was no municipal government in existence, or operation, under either at the time the last act took effect. It applies to cities and towns which then, and for ten years then last past had, exercised municipal government, and which, on account of certain specified defects in organization, had the legality of their incorporation brought in question. The two first incorporations had been abandoned, and there were no municipal governments under them, and hence this legislation had no application to them. The information shows that the incorporation of May 14th, A. D., 1885, was in compliance with the statute, and this being so, we think the demurrer was improperly overruled.

After the demurrer was overruled, plaintiffs in error filed an answer, and on motion of the State, a judgment vacating all former incorporations of the town of Enterprise, or Enterprise, was rendered, as well as a judgment of ouster against plaintiffs in error. The motion seems to have been considered as a demurrer to the answer. Great particularity is required in an answer in such proceedings, and a complete legal right must be shown; State *ex rel.* Law v. Saxon, *supra*; but, on demurrer, a bad plea is a good answer to a defective declaration. The infirmity in the record here is in the information filed by the State. From the State's showing, there is a good cause why plaintiffs in error, and others residing in the corporate limits of Enterprise, should not inaugurate and maintain the municipal corporation in question. The statute gives them this right.

The judgment of the circuit court is reversed with directions that the demurrer to the information be sustained.