JOHN A. MAHOOD, HOWARD HENSHAW, J. J. THOMPSON, LOUIS NATHAN, JOHN V. SHELLHORSE, H. GOODRICH, JACK BETTLES, WILBUR JONES, J. H. BROWNING, RUBIN BENNETT, and TOWN OF MIAMI SHORES, a municipal corporation, *Plaintiffs in Error*, vs. STATE OF FLORIDA, ex rel. FRED H. DAVIS, Attorney General, NORTH ISLAND INVESTMENT COMPANY, a corporation; INDIAN CREEK GOLF CLUB, a Corporation; THE NORMANDY BEACH DEVELOPMENT COMPANY, a Corporation; LUCILLE F. ENSIGN, joined by her husband, WALTER C. ENSIGN, *Defendants in Error*.

Division B.

Opinion filed March 24, 1931.

*Bryant & Pittman,* for Plaintiffs in Error;

*Henry K. Gibson, James H. Lathen* and *Miller & McKay,* for Defendants in Error.

BUFORD, C.J.—In this case the Attorney General as relator, together with the co-relators, filed an information in the nature of quo warranto against the respondents, seeking to oust the respondents from exercising the powers, duties and franchises of a municipal corporation and the officers thereof within certain territory described in the information, which territory is that part of the area sought to be included within the boundaries of the Town of Miami Shores lying East of an imaginary line running Northeasterly and Southwesterly about the middle of Biscayne Bay.

It is alleged in effect amongst other things in the information that in February of 1926 there existed a community known as Miami Shores which was located West of Biscayne Bay; that in that community there were forty nine (49) qualified electors and that thirty-eight (38) of these electors proceeded to organize a municipal corporation under the provisions of sections 1825 to 1828 R.G.S. of Fla. 2935 to 2938 C.G.L. 1927, and by the proceedings had in that regard included within the corpor-

ate limits the territory lying East of Biscayne Bay which is described in the information and which was separated from the village of Miami Shores by the waters of Biscayne Bay which waters immediately East of the village of Miami Shores cover an area about three miles wide.

It was alleged in the information that the area sought to be affected by the information was not a part of, nor connected with, the village of Miami Shores in any way.

There was a motion to quash the information which was denied. There was a motion to dismiss which was denied. A demurrer was overruled. The respondents answered. There was a motion to strike the answer of the Town of Miami Shores, a demurrer to the answer and motion for judgment of ouster. Thereupon, judgment of ouster was entered.

We could affirm the judgment of ouster were it not for the fact that the answer alleges, "It is denied that said territory is not a part of the community of Miami Shores, and that it is far removed and isolated from the community". This allegation traverses the allegation of the information to the effect that the territory sought to be affected by the information was not a part of the community of Miami Shores. This presents a question of fact which the respondents are entitled to have tried by a jury and, until the truth in regard to that fact has been ascertained, it is not needful to discuss other questions raised by the pleadings.

There exists no statutory authority for the citizens, residents or inhabitants of a hamlet, village or town in this State to create a municipal corporation embracing territory not a part of such hamlet, village or town. Such inhabitants may establish for themselves a municipal

government to have jurisdiction over that hamlet, village or town under the provisions of the statute hereinbefore referred to. In Town of Enterprise vs. State, ex rel, 29 Fla. 128, 10 Sou. 740, in an opinion by Mr. Justice Mabry, it is said:

"In Chicago & Northwestern Railway Co. vs. Town of Oconto, 50 Wisc. 189, it was held that the word 'town' as used in the Constitution of that State, denotes a *civil* division composed of *contiguous territory*, and under the power given to county boards by statute to set off, organize, vacate and change the boundaries of towns in their respective counties, such boards can not make a valid order changing the boundaries of a town so that it shall consist of two separate and distinct tracts of land. In Smith vs. Sherry, *Ibid*, 210, it was said: 'The idea of a city or village implies an assemblage of inhabitants living in the vicinity of each other, and not separated by any other intervening civil division of the State.' We think that the inhabitants of a hamlet, village or town recognized as a community of persons authorized to form a municipal government under the general act for the incorporation of cities and towns in force in this State, include persons living on contiguous territory, and that an attempt to incorporate two distinct detached tracts of land, as corporate territory under one government, is unauthorized and void. 1 Dillon's Munc. Corp. sec. 27. The idea of a municipal government with outlying detached municipal provinces, was not contemplated by the statute."

We do not think it can be successfully maintained that by including the expanse of waters of Biscayne Bay lying and being between the two separate tracts of land as a part of the incorporated area, the tracts thus separated may be by this means united and held to be con-

tiguous and subject to be included in a municipal corporation by the action of the inhabitants of a community which was located and had its existence entirely on one side or the other of the Bay.

We are not prepared to say that the legislature could not by proper enactment create a municipality embracing an area a part on one side and a part on the other side of a Bay of this character, but in this case the legislature has not attempted to do that.

The pleadings all admit that there was a village known as Miami Shores and that the inhabitants of this village proceeded to the organization of a municipal corporation. The question of fact to be determined is whether or not that village had its existence and its location in whole or in part of the lands East of the middle of Biscayne Bay.

Webster's New International Dictionary defines a hamlet as: "A little cluster of houses in the country;" a village, as: "Any small aggregation of houses in the country, being in general less in number than in a town or city and more than in a hamlet;" a town, as: "in general, any large collection of houses and buildings, public and private, constituting a distinct place with a name and not incorporated as a city".

It is admitted that Miami Shores was a hamlet or village and if the allegation of the information that that hamlet, or village, was located entirely West of Biscayne Bay then there was no authority in law for the inclusion of the territory East of Biscayne Bay within the corporate limits of the Town of Miami Shores.

For the reasons stated, the judgment must be reversed with directions that further proceedings be had not inconsistent with this opinion. It is so ordered.

Reversed and remanded.

WHITFIELD, ELLIS AND TERRELL, J.J., AND HUTCHINSON, Circuit Judge, concur.

BROWN, J., concurs in part and dissents in part.

DAVIS, J., disqualified.

BROWN, J. (concurring in part and dissenting in part):

The petition for the writ, and the writ of *quo warranto* itself, appears to question, first, the validity of the incorporation of the town of Miami Shores and the right of its alleged officers to exercise the powers and franchises of a municipal corporation, and, second, it seeks to oust the exercise of such municipal powers over that part of the territory East of Biscayne Bay. The judgment of the court merely ousted the individual respondents from exercising the offices, franchises and privileges of a municipality and of the offices of Mayor, Tax Collector, and Town Marshal, "under the purported license and charter of the pretended municipality of the town of Miami Shores." There was no express ouster of the Town of Miami Shores from exercising the franchises and powers of a municipality over any of the territory sought to be incorporated.

The main contentions of the defendants in error, relators in the court below, are, first, that sections 2935 C.G.L., *et seq.*, constitute an unconstitutional delegation of legislative power, and that therefore the attempted action thereunder is wholly void; Second, that if the said statutory provisions are valid, the action taken thereunder is void, at least in so far as the territory East of the Bay is concerned, because such territory was not a part of the "hamlet, village or town" of Miami Shores, and could not lawfully be included therein. It is in this

territory that the property of the individual relators is located.

I am inclined to disagree to the first contention and to agree with the latter. Section 2935 C.G.L. provides that "It shall be lawful for the male inhabitants of any hamlet, village or town in this State, not less than twenty five in number, who shall have the qualifications hereinafter prescribed, to establish for themselves a municipal government with corporate powers and privileges as hereinafter provided." The qualification expressed in section 2937, (as to publication of notice) are "registered voters" residing in the proposed corporate limits, and as expressed in section 2938 they are "qualified electors". Either of these statements might now include women, and since the nineteenth amendment to the national constitution was adopted, it might be necessary to eliminate the word "male" from the first section quoted in order to uphold the validity of the statute, and to clear it from the charge of being class legislation.

While section 2938 provides for the designation of the "territorial limits" of the proposed municipality at the meeting for incorporation purposes, this section should be construed in *pari materia* with the preceding section, 2935.

A fair and impartial interpretation of the intention of the legislature must lead to the conclusion that the corporate territorial limits fixed at the meeting must have some reasonable relation to the approximate territorial limits of the "hamlet, village or town" whose inhabitants are by section 2935 given the power to incorporate. These statutes come dangerously near the line of unauthorized delegation of the legislative power to private citizens, and in order to uphold action taken thereunder,

the procedure prescribed by the statute must be complied with.

If these premises be sound, then it was not lawful to embrace within the limits of the Town of Miami Shores the large area of territory on the other side of Biscayne Bay, which Bay was two or three miles wide at that point and not connected with the territory on the West side by any bridge or causeway. From the facts stated in the information and not denied in the answer, as well as from the facts admitted in the answer, it is inconceivable that the lands across the Bay ever formed any part of the "hamlet, town or village," or community, of Miami Shores on the West side of the Bay, the inhabitants of which had the right to incorporate under Sections 2925 et seq., and that so far as said territory on the East side of the Bay was concerned, the effort to embrace it within the corporate limits of the Town of Miami Shores was beyond the power delegated by the legislature and hence without authority of law. In fact, under the principles enunciated in State ex rel. Davis, vs. Stuart, 97 Fla., 69, 120 So., 335, it is doubtful if the legislature itself could constitutionally have accomplished this directly by legislative act.

If the relators were entitled to a judgment of ouster at all, the judgment of the court below should have ousted not only the officials, but the Town of Miami Shores itself, from exercising any municipal power or authority over the territory East of the Bay, the description of which was set forth in the information and writ.

Under the information as drawn, and the writ, it was not necessary to go further. The existence of the municipality is not necessarily involved in the decision of this case. The procedure required by the statute for incorpo-

ration appears to have been complied with. The only illegality was in respect to the inclusion of territory not contemplated or authorized by the statute. I think this can be struck out and the municipality left intact with its powers unimpaired as to the remainder.

As was said in the Stuart case, the establishment of the boundary lines of a municipality is a legislative power which the courts will not undertake to exercise; that only the legislative power can draw the line, but the courts can set aside lines which are drawn in conflict with constitutional rights. Here the lines were not established directly by the legislature, but were supposed to have been established by the incorporating citizens pursuant to a procedure prescribed by legislative act. It appears that the corporate limits as prescribed by the incorporating citizens embraced territory on the East side of the Bay which was not authorized by the statute to be thus embraced. But certainly the incorporators intended to include the territory on the West side of the Bay; and would this court be warranted in defeating this intention merely because the territory East of the Bay was unlawfully included There is no objection made here that the inclusion of the territory West of the Bay infringed any of the constitutional rights of the relators, or that it was beyond the statutory authority of the incorporators to embrace it within the corporate limits of the town. In determining the constitutionality of legislative acts, the rule is that although a part of a statute must be held unconstitutional, the remainder will be allowed to stand if it be severable and leaves a workable statute within the legislative intent, so far as it goes, and the court cannot say that the legislature could

not have intended to give effect to the valid provisions of the statute if the invalid portion was eliminated. In other words, the courts endeavor to carry out the legislative intent as far as is reasonably possible under the constitution. Applying this principle to the case at bar, I am inclined to think that the municipal authority can be ousted from the territory East of the Bay without setting aside its authority over the territory within the established limits West of the Bay, and also without annulling the legal, existence of the municipality as a corporate legal entity. Certainly the incorporators intended to embrace the territory West of the Bay, in which the Miami Shores community was located at the time of the incorporation. This holding would not mean that the court was attempting to establish municipal boundaries. All that the court would be doing would be, in effect, to oust the exercise of municipal authority and jurisdiction over that portion of the territory unlawfully included within the municipal boundaries, leaving the remainder, and the corporate entity, undisturbed, and thus leaving in force and effect, as far as possible, the exercise of the legislative power in creating the municipal corporation and establishing its territorial limits. This, it seems to me, is the conclusion that should be reached by the application of recognized principles of law, supported by the dictates of sound public policy and plain common sense. The mere fact that this necessary action of the court incidentally operates to effect a partial change in the municipal boundaries should not be allowed to deter or defeat the appropriate exercise of the judicial power, when properly invoked, to declare whether certain territory was or was not lawfully or constitu-

tionally embraced within the corporate limits of a municipality.

Of course, there may be cases where the elimination of the territory unlawfully embraced within the limits of a municipality would so clearly defeat the legislative intent, or the main intent of the incorporators acting under supposed legislative authority, as to require the annulment of the whole, but we do not think the facts of this case bring it within that class of cases.

In the able brief filed in behalf of plaintiffs in error, it is strongly argued that the relators have been guilty of such laches as to estop them from attacking the validity of the proceedings for incorporation, citing many authorities. The question thus presented is a close and difficult one, but we are inclined to uphold the lower court in holding that the argument is not applicable to this case. This is not a case brought merely for the benefit of private property owners. It is a case in which the State by its Attorney General (though joined by private property owners as corelators) is seeking to set aside a certain usurpation of power based on unlawful action taken by private citizens under the color of a legislative act, but in excess of the authority conferred thereby, and in a case of this sort it would require a very strong showing indeed to create an estoppel against the State.

I am inclined to think that the judgment of the court below should be reversed, with directions to enter a judgment of ouster against the respondents, including the Town of Miami Shores, as to the said territory East of the center of Biscayne Bay, in harmony with the principles above expressed.