UNITED STATES ex rel. BROWN–
CRUMMER INV. CO. v. TOWN
OF NORTH MIAMI et al.
No. 1717–M–Civil.

District Court, S. D. Florida.
March 18, 1932.

See, also (D. C.) 11 F. Supp. 73.

Giles J. Patterson, of Jacksonville, Fla., for plaintiff.

Bryant & Pittman, J. Julien Southerland, Forrest Sullivan, and Miller & McKay, all of Miami, Fla., for defendants.

RITTER, District Judge.

Hearing has been had on the motion of the relators to strike from the answer of the intervening respondents that part of paragraph IX beginning with the words "on the other hand," down to and including the words "judgment was found," and also all of paragraphs X and XI. The grounds of the motion are:

1. The relator was not a party to the suit declared on.

2. The circuit court of Dade county had no jurisdiction to release the lands in question.

3. Exclusion of the lands impairs the contract of the bonds, extracts the security therefrom, and violates provisions of the Federal and State Constitutions.

4. Laches and estoppel.

The action is one to mandamus the officials of the town of North Miami to levy a tax to pay a judgment against the town secured by relator on certain municipal bonds in the sum of $11,790 on June 19, 1931, in the state court. The defense set up in the parts of the answer aforesaid is to the effect that by a decision of the state court of Florida certain lands of the intervening respondents located on the east side of Biscayne Bay which were originally included in the town of Miami Shores, which afterwards changed its name by legislative enactment to North Miami, never were within the territorial area of said city, and therefore are exempt from a levy to pay the bonds or any judgments secured thereon. The answer relies upon a decision of the Supreme Court of the State of Florida entitled Mahood et al. v. State ex rel. Davis, Attorney General, et al., 101 Fla. 1254, 133 So. 90, 92, which considers the question as to whether the lands described in the answer were or could be a part of the town of Miami Shores, wherein it was held that the said town was a legally constituted town under the laws of the state but that the Bay of Biscayne, which divided the west and eastern parts of the town, was such a disconnection that if the town was located on the west side of the bay it could not include, if it attempted to do so, the lands on the east side of the bay. The court states: "We think that the inhabitants of a hamlet, village, or town recognized as a community of persons authorized to form a municipal government under the general act for the incorporation of cities and towns in force in this state include persons living on *contiguous* territory, and that an attempt to incorporate two distinct detached tracts of land, as corporate territory under one government, is unauthorized and void. 1 Dill. Mun. Corp. § 27. The idea of a municipal government, with outlying detached municipal provinces, was not contemplated by the statute."

The court evidently had in mind that the waters of Biscayne Bay was such a division that it could not be considered as being included in the town area and considered only the land as not being contiguous; that is, touching. The land bordered the water and the whole area including the bay was within the area of the town. The court says further: "We

are not prepared to say that the Legislature could not by proper enactment create a municipality embracing an area a part on one side and a part on the other side of a bay of this character, but in this case the Legislature has not attempted to do that." The town however did, under general legislative authority, do that very thing. As hereinafter stated, the necessity for contiguous territory being within the corporate limits has been settled by the Florida Supreme Court in several cases. Town of Enterprise v. State, 29 Fla. 128, 10 So. 740; Mahood v. State, supra; Town of Boynton v. State, 103 Fla. 1113, 138 So. 639. With these decisions I do not differ. A town cannot hop, skip, and jump over territory taking this piece of land and that piece of land without reference to a united whole. The question before me is whether lands in a duly and legally incorporated town under the provisions of sections 2935, 2937, 2942, and 2943, and other applicable sections of the Compiled General Laws of Florida 1927, under which Miami Shores, now North Miami, was incorporated and which town did duly and legally issue municipal bonds, can be eliminated thereafter by judicial decree from the levy of a tax to pay a judgment secured upon said bonds on the ground that said lands never had been a part of the territory of said town because in the opinion of the court in construing the principle back of the statute said lands were not contiguous by reason of being separated by a body of water known as Biscayne Bay. The contiguous tracts as dealt with by the Florida decisions were with reference to surveyed and plotted or legally described tracts of land absolutely separate by operation of law. Biscayne Bay is a body of water. It is not such a tract of land as the said court had under consideration in said cases. Section 2937 of said statutes expressly says that when the municipal corporation is to be formed thirty days' notice by publicity must be given, "requiring all persons who are registered voters, residing in the proposed corporate limits, *which shall be stated in this notice,* to assemble at a certain time and place to select officers and organize a municipal government."

It is admitted that this procedure was had as thus required. The east side of Biscayne Bay was included in the described

territory. That is, the west side of Biscayne Bay and the east side were all taken into the town area as I understand the admission of the pleadings. Section 2943 says: "The jurisdiction of said cities and towns, and the authority of the officers thereof, shall be held to have full force and effect over the waters of all rivers, creeks, harbors or bays contained within the corporate limits."

In Lane v. State, 63 Fla. 220, 57 So. 662, 663, the court says: "There is no constitutional provision regulating the statutory descriptions of municipal territory. * * * Under this broad authority it is within the power of the Legislature by valid enactments to prescribe the territorial limits of a municipality as it deems proper when no provision or principle of organic law is violated."

Under section 2937 aforesaid, the Legislature delegated this power to the municipality authorizing it in its organization notice to describe the corporate limits. When a town does this it is a legislative act. No decision of the Florida courts has been cited, nor can I find any, dealing with an issue of municipal bonds under the conditions presented in this case. While the lands involved in this case were thus included in the organization notice of Miami Shores and before the decisions of the state court in Mahood v. State or the decree of the circuit court of Dade county, the bonds in question were duly issued after public notice and election. No protests were made by any of the property owners on the east side of the bay, either at the time of the organization of the town or at the time of the election and confirmation of the bond issue. Three years elapsed after the first issue and more than a year after the last issue and sale of said bonds before any objections were heard, and these came at the time when the owners of the bonds brought suit against the town for judgment on account of default in the payment of principal and interest and when judgment was entered. As set forth in the petition in this case, there is no allegation that there was any fraud in the proceedings or that the purchasers of the bonds were not bona fide. The purchasers of the bonds had a right to rely upon the existing statutes as aforesaid and upon the record of the said lands in question being within the town area and being part of the security back of the bonds.

The property owners of the land in question had an opportunity to prevent by prompt action just what they are now seeking. The statute was in force giving power in the town to include the waters of the bay and the lands along the same. We judicially know that towns are constructed with large lakes and rivers and bays within their area and municipal facilities are constructed for the public utilization of and over said waters. Of two innocent parties, bondholders and east side land holders, which shall suffer the loss; which one had the opportunity to prevent the present situation and to protect their rights and neglected to do so causing the court to act? We can only answer that it was the owners of the lands in question. Furthermore, the bond issue was validated by decree of the state court after due notice and hearing. Further by legislative act approved June 8, 1929 (Sp. Acts Fla. 1929, c. 14237), the bond issue was confirmed, by inference at least. The municipality has received the money for the sale of these bonds and spent it for municipal purposes. The Florida Supreme Court, in State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 742, 37 A. L. R. 1298, in considering invalid municipal bonds, says: "The bonds were expressly authorized by statute and were issued as required by the statute. The proceeds were received by the municipality and used for its benefit. The implied limitation that was held by the court to make the issue of the bonds contrary to organic law, was developed by judicial interpretation after the bonds had been sold, and the money had been used by the city for its purposes as expressly and specifically authorized by the statute. These circumstances clearly render the municipality liable for the amount of the money so received by it, with interest." Undoubtedly mandamus would lie to compel a city to pay a judgment under this doctrine.

The limitation on Miami Shores as to the land east of Biscayne Bay being beyond its power to include has been developed by judicial interpretation after the bonds had been issued and the money therefor used. The argument of the court in the above case applies with equal force to the facts in this case. "The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independ-

ent of any statute, will compel restitution or compensation." Marsh v. Fulton County, 10 Wall. (77 U. S.) 676, 684, 19 L. Ed. 1040; Louisiana v. Wood, 102 U. S. 294, 299, 26 L. Ed. 153. I am aware that the circuit court of Dade county, Fla., pursuant to a mandate of the Florida Supreme Court in Mahood v. State, 101 Fla. 1254, 133 So. 90, has decreed that the lands in question never were within the area of the town of Miami Shores or North Miami. I cannot agree with this in so far as to deny liability in this mandamus suit. At the time of the bond issue they were included as I have set forth. On the strength of this inclusion the bonds were sold to bona fide purchasers.

■ Counsel for respondents urge the decree of the state court as being res adjudicata of the question presented and that the court must follow the same. I do not think so. We are dealing here with a question of general jurisprudence, of commercial law—dealing with municipal securities and the rights of bondholders. General law must decide the issue. The law of estoppel operates in justice against the respondents. The federal court is not bound by the state decision. Under the circumstances none of the state cases presented deal with the rights of bondholders under the conditions presented.

■ "It is an axiom in American jurisprudence that a statute is not to be pronounced void upon the ground that it is in conflict with the constitution of a State, unless the repugnancy to the Constitution be clear and the conclusion that it exists inevitable." Every doubt is to be reserved in support of the enactment * * *. The judicial function involving such a result is one of delicacy and to be exercised always with caution * * *

"With all respect for the eminent tribunal by which the judgments were pronounced we must be permitted to say that they are not satisfactory to our minds, * * * The question before us belongs to the domain of general jurisprudence. In the class of cases the court is not bound by the judgment of the court by the State where the case arises. It must hear and determine for itself. Here commercial securities are involved. When the bonds were issued there had been no authoritative intimation from any quarters that such

statute was invalid * * * the acquiescence was universal * * *

"The National Constitution forbids the States to pass laws impairing the obligation of contracts. In cases properly brought before us that end can be accomplished, unwarrantably no more by judicial decisions than by legislation. Were we to yield in cases like this to the authority of the decisions of the Courts of the respective States, we should abdicate the performance of one of the most important duties with which this tribunal is charged and disappoint the wise and salutary policy of the framers of the Constitution in providing for the creation of an independent Federal judiciary." Township of Pine Grove v. Talcott, 19 Wall. (86 U. S.) 666, 22 L. Ed. 227; Board of Com'rs of Stanly County v. W. N. Coler & Co., 190 U. S. 437, 23 S. Ct. 811, 47 L. Ed. 1126; Folsom v. Township, 159 U. S. 611, 16 S. Ct. 174, 40 L. Ed. 278; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Herron v. S. P. Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857.

The doctrine of the federal courts in cases of this character is expressed in Bourbon County v. Block, 99 U. S. 686, 699, 25 L. Ed. 491: "We have not overlooked the opinion delivered by the Supreme Court of the State in Lewis v. Commissioners, supra [12 Kan. 186]. The judgment in the case was not given until after the bonds were issued, and after the rights of the holders thereof had become fixed. We are, therefore, at liberty to follow our own convictions of the law. To those expressed by the State court we cannot assent. They are not in harmony with many rulings of this court made and respected through a long series of years, and they are not such as in our opinion would administer substantial justice if applied to this case." Board of Com'rs of Comanche County v. Lewis, 133 U. S. 198, 10 S. Ct. 286, 33 L. Ed. 604.

Justice Holmes once said in a decision: "This case is not to be decided by attenuated subtleties."

In so far as the decree of the state court holding the lands in question as never being in the town area is concerned in connection with its bond issues, I cannot agree so as to eliminate these lands from a tax to pay the judgment in question. I do not disturb the state decree

otherwise. For all other purposes so far as my decision reaches, the state decision stands unchallenged. I have given more attention to this motion to dismiss than I should, perhaps. It might have been better to await the final judgment, but I think my position might as well be known now so as to avoid delay in final disposition of the case. If there are any questions of fact which will require evidence and which may affect my stated views here, they can be presented and will have due consideration.

The motion to strike is granted.