## BROWN–CRUMMER INV. CO. v. TOWN OF NORTH MIAMI et al.

### No. 1248–M–Equity.

District Court, S. D. Florida.
April 25, 1935.

See, also (D. C.) 11 F. Supp. 69.

Giles J. Patterson, of Jacksonville, Fla., for plaintiff.

Patterson, Blackwell & Knight, Bart A. Riley, Henry K. Gibson, McKay, Dixon & De Jarnette, Loftin, Stokes & Calkins, and Russell M. Yates, all of Miami, Fla., for defendants.

RITTER, District Judge.

This matter comes on to be heard upon the motion to dismiss the petition filed by the Ocean Beach Heights, Inc., Normandy Beach Development Company, Lucille F. Ensign and her husband, Walter C. Ensign, and Tatum's Ocean Park Company.

The bill is brought in aid of a mandamus writ issued by this court in the case of United States ex rel. Brown-Crummer Investment Company versus Town of North Miami and her officials, demanding a levy to be made upon the lands within the limits of the Town of North Miami to pay a judgment theretofore obtained by the Brown-Crummer Investment Company upon public improvement bonds of the said town, which were issued on March 1, 1928.

In that case, the town of North Miami and its officials were the only parties respondent. The bill in that case set up as a ground for the writ of mandamus that the respondents were refusing to levy a tax on the lands within the town and particularly those located east of Biscayne Bay, because of a decree of ouster of the state court directed to the town and its officials from exercising the franchises and privileges of a municipality over the lands east of Biscayne Bay, which state decree was in accord with a decision of the Supreme Court in Mahood et al. v. State ex rel. Davis et al., 101 Fla. 1254, 1259, 133 So. 90.

The respondents in that case made answer that they were ready and willing to make a levy and collect the fund for the payment of the judgment in question, admitting, "that such judgment prohibits them from levying and collecting taxes against the property described in said writ for the payment of the judgment of the Petitioner or for the payment of other obligations of other creditors of the defendant, Town of North Miami," and they admit "that such judgment does impair the obligation of the contract contained in the bonds upon which the judgment of Petitioner was based, contrary to section 10, article 1, of the Constitution of the United States and section 17 of the Declaration of Rights of the Constitution of the State of Florida, and that such judgment impairs the security which was pledged for the payment of said bonds, and that such judgment will deprive Petitioner and other creditors of defendant, Town of North Miami, of their property without due process of law," and the respondents in that case, further in their answer, state: "The greater portion of the property owners owning land east of Biscayne Bay have declined and refused to pay any taxes levied against said property during the greater part of the Town's existence, and particularly since the institution of said Quo Warranto proceeding nearly three years ago, * * * they were able to collect but little more than the necessary funds for the current operating expenses of said Town; that since the entry of the final judgment of ouster above referred to, the property legally remaining within the Town is wholly insufficient to bear the necessary burden of taxation to meet the requirements and the payments accruing under the various issues of bonds negotiated by the Town prior to the institution of the said Quo Warranto proceeding in said State Court; that said Town still have outstanding approximately Two Hundred and Eighty Thousand, $280,000. Dollars of bonds and matured interest coupons, of which amount approximately $45,000. represents matured bonds and $20,000. represents matured interest coupons; that it it totally impossible for said Town of North Miami to collect sufficient taxes out of the lands in the Town lying West of Biscayne Bay to meet its current operating expenses and make any payments upon its bonded indebtedness above set forth, * * * that if they are required by this Court's writ of mandamus to levy and collect taxes out of the property lying West of Biscayne Bay only, in order to meet the maturing bonds and interest coupons now outstanding against said Town, such levy and assessment would amount to confiscation of properties of its citizens lying West of said Bay and yet would

not yield the necessary taxes to meet said maturing obligations."

Certain property owners sought to intervene in that case to set up the decree of ouster from the state court in the quo warranto proceeding and to defend the action on the ground that their property east of Biscayne Bay was immune from assessment for the payment of the judgment and the bonds in question. It being represented to the court that all questions of law covering the situation might be determined in that case, interveners were allowed to file their intervention answer, and the court considered the merits of the case and decided that a writ of mandamus should issue directing a levy of the taxes upon all the lands within the town of North Miami which were so included at the time of its incorporation and issue of the bonds in question and including the territory east of Biscayne Bay.

The only respondents, the town of North Miami and its officers, did not appeal, but the interveners did. The Circuit Court of Appeals rendered its decision dismissing the appeal of the interveners because they had no right of intervention and could not be considered in the case. Normandy Beach Dev. Co. v. U. S. ex rel. Brown-Crummer Inv. Co., 69 F.(2d) 105.

█ The status of that case, therefore, is that the decision of this court and the writ of mandamus issued, stands unimpeached and are in fact res judicata of the question now sought to be raised by the respondents in the instant case upon their motion to dismiss. I held in that case that I could not follow the Mahood Case when applying the rights of bondholders to the situation. 11 F. Supp. 69. None of the cases in the state court involved bondholders' rights; they all involved the question of whether or not the lands east of Biscayne Bay were within the municipality, and all follow the Mahood Case, which held that the lands were not within the limits of the town.

█ Bondholders are not bound by that decision. They were not parties to it and are entitled to their day in court. The rights of bondholders stand upon a different ground than the rights of landowners in reference to the matter under consideration. I refer to my opinion in the mandamus case as setting forth my views of the situation. I have not changed my mind. Boynton v. Moffat Tunnel Imp. Dist. (C. C. A.) 57 F.(2d) 772.

Defense counsel have urged the case of Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 77 L. Ed. 610, as authority for the proposition that this court is bound to follow the Mahood decision of the Florida Supreme Court; but I think it is not applicable because as the court states (288 U. S. 52, 59, 53 S. Ct. 240, 243, 77 L. Ed. 610): "No controversy is here as to the impairment of the obligation of a contract in violation of the restraints of the Federal Constitution." The instant case does involve that question.

█ The defendants here, furthermore, are not in a position to urge the dismissal of this case on the ground that their property has been excluded by the Mahood decision, because of laches and in fact acquiescence in the bond issue for more than three years, permitting meanwhile, with knowledge, the bonds to be sold to the public upon the representation and belief that back of them stood the property in question for taxation, and because of the fact that some of the proceeds of the sale of these bonds was, in fact, spent for public improvements upon the property in question and accepted by the property owners. Jackson et ux. v. McWilliams Dredging Co., 76 F.(2d) 795, decided April 2, 1935, Fifth Circuit Court. It was generally understood and accepted before the time came to pay on these bonds, that they were backed by the obligation on the lands in question. The organization and proceedings of the town of North Miami, in the issue of these bonds, is a fine example of the boom-time psychology and faith of the people in Florida. These bonds were issued in the belief that the town would become a great place with thousands of inhabitants, stretching all around the Bay of Biscayne, a bridge across the bay was in fact in the course of construction, and property owners were ready to permit any amount of bonds to be sold to the public investors for public improvements, believing that the future increase in population and values would easily pay them out. The great enthusiasm and imagination led to extravagance which is now startling. When the financial orgy passed and values slumped and taxes became a burden and the time of payment on the bonds arrived, property owners then attempt to

repudiate the payment of these bonds and to extract their properties from under the burden.

If the property east of Biscayne Bay can be whittled away from this town and other territory possibly by some other proceedings may be likewise extracted, it will readily be seen that there will be little left upon which taxes for these bond payments can be levied and eventually there might remain only the town hall, which is untaxable. The answer of the town in the mandamus suit states the situation.

The bondholders cannot be thus treated. The innocent holders of these bonds had a right to rely upon the conditions represented as existing at the time these bonds were issued, when it was claimed and asserted by everybody that the town limits included the land now sought to be excluded. See former opinion (D. C.) 11 F. Supp. 69. On the faith of that the bonds were bought.

It is a matter of general commercial law that is involved, the rights of contract which cannot be avoided by judicial construction. The authorities are numerous that the federal courts are not bound under the consideration of such law by state decisions, but they exercise their own judgment. By the quo warranto proceeding in the state court, the town and its officers may be ousted from general jurisdiction over the property east of Biscayne Bay for municipal purposes, but cannot be ousted from the levy and collection of taxes for these bonds, as directed by this court. Fetzer v. Johnson (C. C. A.) 15 F.(2d) 145.

"The National Constitution forbids the States to pass laws impairing the obligation of contracts. In cases properly brought before us that end can be accomplished unwarrantably no more by judicial decisions than by legislation. Were we to yield in cases like this to the authority of the decisions of the courts of the respective States, we should abdicate the performance of one of the most important duties with which this tribunal is charged and disappoint the wise and salutary policy of the framers of the Constitution in providing for the creation of an independent Federal judiciary." Township of Pine Grove v. Talcott, 19 Wall. (86 U. S.) 666, 678, 22 L. Ed. 227; Board of Com'rs of Stanley County v. W. N. Coler & Co., 190 U. S. 437, 23 S. Ct.

811, 47 L. Ed. 1126; Folsom v. Township, 159 U. S. 611, 16 S. Ct. 174, 40 L. Ed. 278; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Herron v. S. P. Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857.

The doctrine of the federal courts in cases of this character is expressed in Bourbon County v. Block, 99 U. S. 686, 699, 25 L. Ed. 491: "We have not overlooked the opinion delivered by the Supreme Court of the State in Lewis v. Commissioners, supra [12 Kan. 186]. The judgment in the case was not given until after the bonds were issued, and after the rights of the holders thereof had become fixed. We are, therefore, at liberty to follow our own convictions of the law. To those expressed by the State court we cannot assent. They are not in harmony with many rulings of this court made and repeated through a long series of years, and they are not such as in our opinion would administer substantial justice if applied to this case." Board of Com'rs of Comanche County v. Lewis, 133 U. S. 198, 10 S. Ct. 286, 33 L. Ed. 604.

I held in my former opinion in this case that the laws in existence at the time these bonds were executed warranted the inclusion of the territory in question as part of the taxing district when these bonds were issued.

Cooley's Constitutional Limitations, vol. 1, p. 598, states: "It has been held that where a statute authorized a municipal corporation to issue bonds and to exercise the power of legal taxation in order to pay them and persons bought and paid value for bonds issued accordingly, this power of taxation is part of the contract and cannot be withdrawn until the bonds are satisfied; that an attempt to repeal or restrict it by statute is void, and that unless the corporation imposes and collects the taxes in all respects as if the subsequent statute had not been passed, it will be compelled to do so by mandamus."

A state judicial decision can no more impair the contract in question than can a legislative act. Port of Mobile v. Watson, 116 U. S. 289, 6 S. Ct. 398, 29 L. Ed. 620; Humphreys v. State, 108 Fla. 92, 145 So. 858; Town of Samson v. Perry, 17 F.(2d) 1 (C. C. A. 5th Circuit).

The fact that the bonds have been reduced to judgment does not alter plaintiff's rights. The judgment carries with it all rights which attached to the original bonds and coupons. Ralls County v. United States, 105 U. S. 733, 26 L. Ed. 1220; United States v. Knox County, 122 U. S. 306, 7 S. Ct. 1171, 30 L. Ed. 1152; State v. Livingston, 103 Fla. 841, 139 So. 364.

This injunction suit is in aid of the mandamus heretofore issued. The petition sets up a condition which, if proven, must be unblocked to make this court's decree effective.

The motion to dismiss is denied.