WALTER S. HEYWARD, as Mayor, *et al.,* v. LYDEN M. HALL and JOHNNIE A. FAUST, a single woman.

198 So. 114

En Banc

Opinion Filed October 4, 1940

Rehearing Denied October 30, 1940

346

*Redfearn & Ferrell,* for Appellants;

*Stanley Milledge,* for Appellees.

*Giles J. Patterson, T. M. Shackleford, Jr., P. C. Gorman, Hull, Landis & Whitehair,* as *Amici Curiae.*

WHITFIELD, J.—Appellees, plaintiffs below, brought this suit in equity seeking an injunction to prevent the taxation and sale and conveyance of plaintiffs' lands for nonpayment of municipal taxes imposed upon the lands in the Town of North Miami. The grounds alleged are in effect that there is no such municipality in legal existence, *de jure* or *de facto,* because the general statute under which the alleged incorporation was attempted, Sections 2935 (1825), *et seq.,* C. G. L., is unconstitutional and void, and because the proceedings attempting to incorporate the non-contiguous tracts of land entirely separated by Biscayne Bay was unauthorized by the general statute and void. There was a motion to dismiss the bill of complaint on the theory that plaintiffs have no right to maintain this suit on the grounds alleged for the reason that it appears there is in existence a municipality on the west side of Biscayne Bay recognized by the statutes of the State within the area sought to be incorporated under the general statute now known as the

Town of North Miami, therefore the remedy, if any, is by quo warranto proceedings brought upon relation of the Attorney General in the name of the State. Answers were filed. The court held the general statute authorizing the incorporation to be unconstitutional; held the incorporation proceedings to be void; and denied the motion to dismiss and decreed the injunctive relief sought on the grounds alleged by plaintiffs. Defendants appealed and assigned error on denying the motion to dismiss and on rendering decree for plaintiffs.

Allegations as to the illegality of Sections 2935 (1825), *et seq.*, C. G. L., will be discussed later in this opinion.

The plaintiffs below, appellees here, in effect allege that on or about February 5, 1926, "a group of individuals residing in a hamlet located in" described "territory which lies on the west side of Biscayne Bay, together with other individuals residing in" described "territory located on the east side of Biscayne Bay," attempted under the general statutes of the State, Secs. 2935 (1825), *et seq.*, C. G. L., to incorporate a municipal corporation called 'Town of Miami Shores'; that such statute is an unlawful delegation of legislative power, and violated Amendment XIX of the Federal Constitution; that such attempted incorporation was void and of no effect for the reason that the lands sought to be included in said incorporation were two separate and distinct parcels and tracts of lands; that the lands are separated by Biscayne Bay, which is at points within the described territory approximately a mile in width; that it was impossible to get from the part of the land referred to lying on the west of Biscayne Bay to the part lying east of Biscayne Bay except by boat or by passing through adjoining municipalities; that it was approximately ten miles from the populated part of the land on the west of Bis-

cayne Bay to the land lying east of Biscayne Bay," that "subsequently to the attempted incorporation the name of the alleged municipal corporation was changed by the Legislature of the State of Florida from 'Town of Miami Shores' to 'Town of North Miami'; that "under a judgment of the Circuit Court affirmed in Mahood v. State, 101 Fla. 1254, 133 So. 90, the said alleged municipality and its officers were ousted from exercising authority over the lands included within said municipality lying east of Biscayne Bay"; that "the Attorney General has refused to give his consent to allowing quo warranto proceedings to be instituted for the purpose of testing the legality of the incorporation of said purported Town of North Miami." The prayer of the bill is that "E. B. Leatherman, as Clerk of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County, Florida, and his successors in office, be perpetually enjoined and restrained from issuing a tax deed upon the land of the plaintiffs hereinabove described upon the described tax certificate, and that said tax certificates be cancelled," and that the other defendants be permanently enjoined and restrained from attempting to assess, levy or collect taxes upon the land of plaintiffs.

Relief is not sought on the ground that even if the Town exists as a *de jure* or *de facto* municipality, yet plaintiffs' lands are so remote from municipal activities and municipal improvements and so situated and conditioned that they cannot be benefited by being incorporated in the municipality, and that taxation of plaintiffs' lands for municipal purposes violates plaintiffs' organic property rights. See City of Winter Haven, *et al.,* v. A. M. Klemm & Son, 141 Fla. 75, 192 So. 646; City of Sarasota v. E. E. Skillin, *et al.,* 130 Fla. 724, 178 So. 837; State v. Avon Park, 108 Fla. 641, 149 So. 409, and other cases cited. The grounds alleged in this case for injunctive relief are the invalidity

of the stated general statute and of the municipal incorporation formed by the inhabitants under the general statute.

Plaintiffs below have no right to maintain this suit to enjoin municipal taxation on the ground that the challenged municipality was *not legally incorporated* and does not exist in law, if it actually exists as either a *de jure* or a *de facto* municipality on the west side of Biscayne Bay. In such a case quo warranto by the Attorney General is the remedy. See Robinson v. Jones, 14 Fla. 256; McDonald v. Rehrer, 22 Fla. 198; Town of Kissimmee v. Cannon, 26 Fla. 3, 7 So. 523; Town of Enterprise v. State, 29 Fla. 128, 10 So. 740; Gaulden v. Bellotte, 79 Fla. 104, 83 So. 866; State v. City of Sarasota, 92 Fla. 563, 109 So. 473; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 261; State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672; State *ex rel.* Wurn v. Kasserman, 131 Fla. 234, 179 So. 410.

In this case it clearly appears that the Town of North Miami actually exists and its government is in operation and has been recognized by statutes and by judicial decrees and judgments as having legal existence and operation at least as a *de facto* municipality on the *west* side of Biscayne Bay, in Dade County, Florida.

The main contention in support of the decree of the circuit court is that the attempt of the inhabitants of a hamlet on the west side of Bay Biscayne in 1926 to establish a municipal government for themselves under the general statute, Sec. 2935 (1825), *et seq.,* C. G. L., to be known as Town of Miami Shores, now Town of North Miami, was wholly void and ineffectual to give the Town a legal existence under the statute because described non-contiguous lands on the east side of the Bay as well as described lands on the west side of the Bay were included in the incorporation proceedings taken by the in-

habitants under the general statute and that such inclusion on non-contiguous tracts of land, being unauthorized, rendered the incorporation proceedings null and void under the decision in Town of Enterprise v. State, 29 Fla. 128, 10 So. 740, and that consequently there can be no *de jure* or *de facto* Town of North Miami within the area described in the incorporation proceedings even on the west side of Bay Biscayne, where there was a hamlet at the time of the incorporation and now is a Town asserting municipal authority under the name of Town of North Miami.

The conclusion asserted is not justified for the reason that in the cited Town of Enterprise case the second attempt of the inhabitants of a hamlet or village to establish for themselves a municipal government under the general laws of the State *was abandoned;* and in reviewing the matter to determine the alleged invalidity of the third effort to establish a municipality the court stated that the second attempt was void and had been abandoned, so it did not effect the proceedings in the third attempt to incorporate, which was sustained. See State v. Winter Park, 25 Fla. 371, 5 So. 818. It is clear from the whole record in the Town of Enterprise case that the court had no purpose to decide and did not intend to adjudicate that the entire second proceedings were wholly void and could be of no legal efficacy whatever; but intended to hold that in the case as then presented, the second incorporation proceedings were illegal because they included non-contiguous tracts of land. There was of course no occasion in that case to consider the applicable law if there had been the exercise of *de facto* municipal authority over all or part of the described land, which presumably contained a hamlet or village, in *one* of the non-contiguous tracts of land. In this case municipal authority, upon incorporation by the inhabitants in 1926 under the statutes, has been exercised over lands described in the in-

corporation proceedings on the west side of Bay Biscayne where there was and is a hamlet or village which could have been incorporated by the inhabitants under the general statutes; and such municipality has now been repeatedly recognized by the statutes of the State since 1927, which in legal effect makes the village or town on the west side of the Bay at least a *de facto* municipality. Municipal authority was also attempted to be exerted over the described lands on the east side of the Bay until such authority was ousted by quo warranto judgment rendered in 1931 pursuant to the decision in Mahood v. State, 101 Fla. 1254, 133 So. 90. See also Ocean Beach Heights v. Brown Crummer Investment Co., 302 U. S. 614, 82 L. Ed. 478, 58 Sup. Ct. 608; Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845; United States v. Heyward, 98 Fed. (2d) 433. Such judicial ouster of municipal jurisdiction of the Town of Miami Shores and of North Miami by name from the east side of the Bay was a judicial recognition of the continued existence of the Town as a municipality, at least *de facto,* on the west side of Bay Biscayne.

There are several special or local laws recognizing the existence of the municipality of the Town of Miami Shores, later Town of North Miami, and regulating its municipal authority, duties and functions. These statutes considered with the matters above stated, clearly make the Town of Miami Shores or North Miami on the west side of Bay Biscayne at least a *de facto* if not a *de jure* municipality with prescribed statutory jurisdiction and powers within the limits of the incorporation. See Chapters 13103, Acts of 1927; 14237, Acts of 1929; 15347, Acts of 1931; 15822, Acts of 1931; 15823, Acts of 1931; 16584, Acts of 1933; 17616, Acts of 1935; 17617, Acts of 1935; 17618, Acts of 1935; 18728, Acts of 1937. For judicial recognition of the Town of North Miami see the Town of North Miami v.

The Travis Co., 118 Fla. 879, 160 So. 360; Leatherman v. Alta Cliff Co., *supra;* Mahood v. State, *supra;* Ocean Beach Heights v. Brown Crummer Investment Co., *supra;* United States v. Heyward, *supra.*

The general statute herein referred to was enacted under the Constitution of 1868 which forbade special or local laws regulating municipal business, Sec. 17, Art. IV; and required the establishment of a uniform system of municipal government, Sec. 21, Art. IV, and required general laws for the incorporation of municipalities. Sec. 22, Art. IV, Constitution of 1868.

In obedience to the above organic commands, Chapter 1638, Acts of 1869, a general law providing for a uniform system of municipal governments in this State, was enacted and' later amended authorizing inhabitants of any hamlet, village or town in this State, not less than twenty-five in number, who are registered voters residing in the proposed corporate limits, to establish for themselves a municipal government with corporate powers and privileges, by the procedure stated in the statutes. Sec. 2935 (1825), *et seq.,* C. G. L., and Sec. 2942 (1832), *et seq.,* C. G. L., define the authority, duties, functions and privileges of municipalities established by inhabitants under the general laws.

Authority conferred upon qualified inhabitants by such general statutes to establish for themselves municipal governments, which shall exercise the authority conferred by general law, is not a delegation of legislative power in violation of Articles III and IV of the Constitution of 1868 or of Articles II and III of the Constitution of 1885. Such authority conferred upon the qualified elector inhabitants of any hamlet, village or town in the State to establish a municipal government for themselves by prescribed proceedings is merely to establish stated facts with reference to a de-

scribed limited area, upon which duly established facts the statute operates to create a municipality to exercise prescribed authority and duties for local governmental purposes. See McMullen v. Newmar Corp., 100 Fla. 566, 129 So. 870. After being so established, the municipality is by the statutes above cited given corporate and municipal authority and duties as are prescribed within applicable limitations of the Constitution. The constitutional validity of the cited general statute has been recognized in State v. Winter Park, 25 Fla. 371, 5 So. 818; Town of Ormond v. Shaw, 50 Fla. 445, 39 So. 108; Schultz v. State, 80 Fla. 564, 86 So. 428; State v. Town of Forest Park, 87 Fla. 477, 100 So. 735; State v. Owens, 92 Fla. 356, 109 So. 423. See also Sec. 24, Declaration of Rights, Florida Constitution.

Sec. 2, Art. XVIII, Constitution of 1885, is as follows:

"All laws now in force not inconsistent with this Constitution shall continue in force until they shall expire by their own limitation, or be repealed by the Legislature."

See Town of Kissimmee City v. Cannon, 26 Fla. 3, 7 So. 523. The statutes above cited are not inconsistent with Sec. 24, Art. III, Sec. 8, Art. VIII, or other provisions of the Constitution of 1885.

Statutory authority conferred upon male inhabitants who are qualified electors to establish municipal governments for themselves by prescribed procedure, does not necessarily involve the exercise of "the right of citizens of the United States to vote" without discrimination as to sex, under Article XIX of the Amendments to the Federal Constitution. But if such statutory authority does violate such Article XIX by using the word "male," such quoted word may be regarded as having been eliminated from the statute by the paramount force and effect of the Federal organic amend-

ment, Article XIX. State *ex rel.* Barnett v. Gray, 107 Fla. 73, text 81, 144 So. 349; City of Winter Haven v. A. M. Klemm & Son, 132 Fla. 334, text pages 340, 341, 181 So. 153, text pages 156-7; Neal v. Delaware, 103 U. S. 370, text 389, 26 L. Ed. 567. See also Leser v. Garnett, 258 U. S. 130, text 135, 66 L. Ed. 505, 42 Sup. Ct. 217; Graves v. Eubank, 205 Ala. 174, 87 So. 587; Prewitt v. Wilson, 242 Ky. 231, 46 S. W. (2d.) 90.

Plaintiffs cannot in this proceeding challenge the legal existence of the municipality whether it be a *de jure* or a *de facto* municipality.

The municipal authority of the Town was not ousted from the west of Bay Biscayne in the Mahood case as claimed by Appellees. As shown by the record on file in this court in E. B. Leatherman, *et al.,* v. Alta Cliff Co., Ocean Beach Heights v. Brown Crummer, Inc., *supra,* the quo warranto judgment referred to by counsel for all parties in this case as having been ultimately rendered December 18, 1931, by the Circuit Court pursuant to the mandate of this Court in the case of Mahood v. State, *supra,* is in part as follows: "Ordered and adjudged by the court, that the respondents Louis Nathan as Mayor, * * * of the Town of North Miami, (formerly known as Town of Miami Shores) and the Town of North Miami (formerly known as Town of Miami Shores) be and they each are hereby ousted, excluded and prohibited from exercising the offices, franchises and privileges of a municipality or municipal corporation, and of the Mayor * * * thereof, under the purported license, incorporation and/or charter of the Town of North Miami (formerly known as Town of Miami Shores) over or upon the following described lands, or any part thereof, to-wit:" (description of lands by metes and bounds).

"It is further ordered and adjudged by the Court that

the lands above described which constitute all that portion of the purported Town of Miami Shores East of Bay Biscayne, and between said Bay Biscayne and the Atlantic Ocean are not, and never were legally incorporated in the Town of Miami Shores, now known as Town of North Miami and that said lands were never a part of the said purported Town and that their attempted inclusion therein was illegal, null and void and without warrant or authority of law."

Such judgment of ouster clearly was confined and limited to the lands on the east side of Bay Biscayne which were attempted to be included in the Town of Miami Shores, sought to be established in 1926 under Sec. 2935 (1825), *et seq.*, C. G. L., by inhabitants of a hamlet then existing on the west side of Bay Biscayne. The judgment is now *res adjudicata* as to the lands on the *east* side of the Bay.

The decree is reversed and the cause remanded with directions to dismiss the bill of complaint.

TERRELL, C. J., BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—For the reasons set forth in my separate opinion in the case of Mahood v. State *ex rel.* Davis, 101 Fla. 1254, 133 So. 90. I think that as to the territory west of Biscayne Bay, the Town of North Miami, originally incorporated as the Town of Miami Shores, became a municipal corporation *de jure*, and has continued as such. In this respect, I go a bit further than Mr. Justice WHITFIELD, who in his opinion holds that the Town of Miami Shores, now North Miami, is at least a town *de facto*, if indeed it is not one *de jure*. Perhaps that is as far as we need to go in this case, but personally I adhere to my views as stated in the above cited case.