NORTH MIAMI, FLORIDA, v. MEREDITH et al.

No. 9824.

Circuit Court of Appeals, Fifth Circuit.

June 23, 1941.

---

280

R. H. Ferrell, of Miami, Fla., for appellant.

D. C. Hull, Erskine W. Landis, and Francis P. Whitehair, all of DeLand, Fla., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

On bonds and coupons issued by North Miami, Brown-Crummer Investment Company obtained judgments in the District Court in 1931 and 1937, and H. T. East one in 1936, on which fifas have been returned nulla bona. These judgments have been assigned to the appellees here, who in the District Court obtained by summary judgment, based on the pleadings and admissions, a mandatory order against the town and its officers for the levy and collection of a special tax to pay the judgments against all property within the limits of the town when the bonds were issued, except certain lands east of Biscayne Bay excluded from the town by a judgment of ouster on quo warranto.

The town's pleaded contentions are that its nonexistence de jure and de facto was established by the decree of ouster, rendered pursuant to Mahood v. State, 101 Fla. 1254, 133 So. 90, and was again adjudged between Brown-Crummer Investment Company and the town in Ocean Beach Heights v. Brown-Crummer Investment Co., 5 Cir., 87 F.2d 978; Id., 302 U.S. 614, 58 S.Ct. 385, 82 L.Ed. 478; that one of the bond issues involved was void in whole or in part because in excess of a statutory limitation to ten percent of the assessed value of property within the city at the time of issue; and that the tax required is inequitable because imposed wholly on west side property when reliance was put by all concerned also on taxation of the east side property; and because it would be impossible to collect so much tax from the west side.

North Miami, originally called Miami Shores, was self-incorporated under a statute which permits the inhabitants of a hamlet or village to establish for themselves a municipal government, Comp.Gen. Laws, § 2935, and following. In this instance the hamlet was on the west of Biscayne Bay, but the designated boundaries included a large and valuable territory across the Bay. The bonds were issued, validated by court decree and sold, and the proceeds used principally in improving the west side. Thereafter the right under the statute to include the east side lands, separated by three miles of water, was contested, and on quo warranto on Dec. 18, 1931, it was adjudged that the town's officers and the town of North Miami "be and they each are hereby ousted, excluded and prohibited from exercising the offices, fran-

chises and privileges of a municipality and of the Mayor or Councilmen, Tax Collector, Clerk and Town Marshal thereof, under the purported license or incorporation and Charter of the town of North Miami over or upon the following described lands (describing the east side of the Bay). It is further ordered and adjudged that the lands above described, which constitute all that portion of the purported town east of Bay Biscayne and between said Bay Biscayne and the Atlantic Ocean, are not and never were legally incorporated in said town * * * and that their attempted inclusion therein was illegal, null and void and without warrant or authority of law."

This judgment did not purport to nullify the municipality or oust its officers wholly, but only as to the part of the town east of the Bay. The municipality west of the Bay has continued to function ever since, and has repeatedly been recognized by the legislature and the courts as an existing municipality. A careful reading of the opinion of the Supreme Court of the United States in Ocean Beach Heights v. Brown-Crummer Co., 302 U.S. 614, 58 S.Ct. 385, 82 L.Ed. 478, discloses that no more was there adjudged than that the east side property was never lawfully included in the town and could not be taxed by it. We carefully considered the status of the municipality in Horigan v. Heyward, 5 Cir., 98 F.2d 433, 434, and said: "We understand by this that North Miami (the name was changed from Miami Shores by the Legislature) was held to be not a de jure or perfect corporation because it had unlawfully included the territory east of the Bay, but that the hamlet, being on the west side of the Bay, became a de facto corporation under color of the statute, embracing the territory which was contiguous to it and properly claimed west of the Bay." That view was taken also by the Supreme Court of Florida in Heyward v. Hall, 144 Fla. 344, 198 So. 114. North Miami is a municipality which may contract debts, be sued for them, and be compelled to levy taxes to pay them according to the laws of Florida touching municipal corporations.

The amendment of the answer states that when one issue of $175,000 of bonds here involved was made in 1926 the statute which authorized them, Comp.Gen. Laws, § 3011, limited them "to an amount not exceeding ten per cent. of the assessed value of the real and personal property within its incorporated limits", that the last assessment roll showed a total assessed value of $2,057,163, and this fact was alleged in the petition on which a decree validating the bonds was granted before their sale; but that about half that assessed value was of property on the east side of the Bay which in 1931 was eliminated from the town by quo warranto, and held never to have been in the town, so that only about $100,000 of bonds could lawfully have been issued. Although it now appears that the bonds were more than ten percent of the assessed value of property really within the town, that question was laid before the validating court by the State's petition to validate, the town either admitted the alleged valuation, or it was made a subject of contest, the record does not show which. Every inhabitant was made a party by published notice, and the decree was by the statute authorizing it conclusive on the town, its citizens and taxpayers, as to the validity of the bonds. Greene v. Uniacke, 5 Cir., 46 F.2d 916; Thompson v. Frostproof, 89 Fla. 92, 103 So. 118. A total want of power to issue any bonds is in Florida apparently not cured by a validation decree, Olds v. Alvord, 139 Fla. 745, 191 So. 434; and the validation statute may not suffice to defeat constitutional provisions unless those provisions are actually litigated and decided in the validation proceeding, Weinberger v. Board Public Instruction, 93 Fla. 470, 112 So. 253. But neither exception applies here. North Miami could issue bonds, and there is no constitutional restriction involved. The bonds themselves state they do not exceed any limitation prescribed by the Constitution or statutes of Florida, the assessed value of property was brought before the validating court, and it held the bonds valid. If the assessment roll was incorrect in mistakenly including property that ought not to have been included, the mistake was not that of the bond purchasers. They were entitled to buy on the faith of the bonds and the decree. The decree was intended to settle issues like this, and it does. Sparks v. Ewing, 120 Fla. 520, 163 So. 112.

There is no general inequity in compelling the taxpayers of the town to pay these bonds the proceeds of which have appeared in previous litigations to have been almost wholly used for the permanent improvement of the town on the west side of the Bay. The only oppressiveness seems to be in taxing in one year to pay the accumulated defaults of many

years. This is not a reason to escape the taxation in whole or in part, but it may justify the court in now spreading the taxation over several years. This appears to be advisable in the present case, but was not asked for in the answer or its amendment. We will not reverse the judgment for error in this regard, for there was none, but we will direct that this affirmance shall not prevent an application for such a spread. King v. United States ex rel. Tiedtke, 5 Cir., 100 F.2d 797. A peremptory mandamus may in such circumstances be enforced, modified or postponed as justice may require. United States v. Key West, 5 Cir., 78 F. 88; State ex rel Bottome v. City of St. Petersburg, 126 Fla. 233, 170 So. 730.

Affirmed.